MELVIN STONER & others *vs.* PLANNING BOARD OF AGAWAM & others.

Hampden. November 3, 1970. — February 18, 1971.

Present: TAURO, C.J., SPALDING, CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Subdivision Control.*

Under G. L. c. 41, § 81U, as amended through St. 1965, c. 62, failure of the planning board of a town, with respect to a subdivision plan which the board had approved within sixty days of submission to it, to file with the town clerk a certificate of its action until after the expiration

of such period resulted in the plan being "deemed" to have been approved, and purchasers of the land involved, who acquired it in good faith after such "constructive" approval were entitled under § 81V to a certificate from the town clerk stating that the board had failed to take final action and that the approval resulting from such failure had become final; a purported rescission by the board under § 81W, without the purchasers' consent, of its prior votes of approval of the plan was a nullity. [713–714, 715]

The provision of G. L. c. 41, § 81X, that no register of deeds shall record any subdivision plan of land in a city or town in which the Subdivision Control Law is in force unless the plan has an endorsement of approval thereon "dated within six months of the date of the recording" or a certificate "dated within thirty days of the recording, that the approval has not been modified, amended or rescinded, nor the plan changed," does not apply to plans which have been "constructively" approved under § 81U. [714]

Under G. L. c. 41, § 81U, as amended through St. 1965, c. 62, a planning board had authority to require from landowners security for the construction of ways and the installation of municipal services in their land shown on a subdivision plan "constructively" approved thereunder by reason of the board's failure to complete final action thereon seasonably. [715]

BILL IN EQUITY filed in the Superior Court on June 13, 1968.

The final decree was entered by *Meagher*, J.

*John J. Teahan & Frederick S. Pillsbury*, for the defendants, submitted a brief.

*James H. Tourtelotte* for the plaintiffs.

TAURO, C.J. This case is an appeal to the Superior Court under G. L. c. 41, § 81BB, from the decision of the planning board of Agawam (the board) to rescind its approval of a recorded subdivision plan for the property of the plaintiffs Mr. Stoner and Guastamachio. The case was referred to a master who found subsidiary facts and made general findings based thereon. The defendants excepted to the general findings made by the master, who found, inter alia, that the subdivision approval by the board was valid and the board's subsequent rescission ineffective. There was no exception to the subsidiary findings upon which the general findings were based. The defendants appeal from an interlocutory decree confirming the master's report and from a final decree upholding the validity

of the subdivision plan and annulling the board's rescission.

The undisputed facts of the case are summarized: On April 7, 1967, the plaintiffs, Mr. Stoner and Guastamachio, acquired title to the land in question from Eagle Realty, Inc. (Eagle) in an arm's-length transaction consummated after lengthy negotiation as to the price to be paid. Prior to that time, when Eagle owned the property, the board rejected a subdivision plan submitted by Eagle; but later, on July 8, 1966, the board approved the subdivision plan after Eagle obtained permission from a utility company for a forty foot wide right of way abutting the subdivision. A revised plan had been submitted to the board on May 13, 1966. On July 12, 1966, the board of health's approval was indorsed on the plan. The board did not request of Eagle a bond or covenant to secure the installation of streets and municipal services in the subdivision as it was the custom of the board to require such a bond or covenant only when the landowner was going to proceed with actual construction of buildings in the subdivision. On July 18, 1966, the board wrote to the town clerk advising that the plan had been approved on July 8, 1966. The "town's subdivision rules" required a fifty foot wide street, which requirement the board was authorized to waive. The minutes of the board are incomplete with pages missing, but members of the board at the time the approval of the plan was under consideration testified that they had waived the fifty foot width requirement and had accepted the forty foot right of way shown on the plan. At the board meeting of May 12, 1966, it was moved and seconded to waive the fifty foot requirement but action on the motion was deferred to give the town's engineering department and health department agent a chance to review the plan. A meeting with the engineering department was held and although no formal action was taken in the minutes on the motion, the plan showing the forty foot right of way was approved by the board on July 8, 1966, and the approval of the health department was affixed to it on July 12, 1966.

None of the plaintiffs knew the owners of Eagle up to the time the plan was approved on July 8, 1966. The plaintiff Guastamachio was made aware of the property by one Moreno who had an option to buy it. In October, 1966, Guastamachio agreed to pay $24,000 to Eagle for the property and to pay Moreno $4,000 for an assignment of his option. Guastamachio then told his associate, the plaintiff Mr. Stoner, who is a lawyer, about the transaction and Mr. Stoner was to see that the conveyance was completed. In December, 1966, Mr. Stoner retained a law firm specializing in conveyancing and title examinations to examine the title and complete the conveyance. Mr. William Young examined the title and had to obtain various documents to clear the title, which took him until March of 1967. Mr. Young found no subdivision plan on record and advised his clients that to be effective, a subdivision plan must be approved within six months of the date it was to be recorded. Mr. Stoner advised Mr. Young that the sale could not be consummated without an approved subdivision plan. Since more than six months had elapsed from the date of the plan's approval, Mr. Young could not record the plan. Mr. Young advised Mr. Stoner that the plan would have to be updated by the board before it would be in proper form for recording. Mr. Young took the plan to the clerk of the board and asked her if she would have it restamped. The clerk stated that she would put it on the agenda for the next board meeting on January 13, 1967. After January 13, 1967, the clerk told Mr. Young that the plan had been restamped and could be recorded. Mr. Young recorded the plan on April 3, 1967. The plan which was recorded is identical to the plan which the board approved on July 8, 1966, with the exceptions that there is no stamp of approval on the recorded plan by the board of health, and the stamp of approval on the recorded plan is dated January 13, 1967, and is signed by four members of the board rather than three. Like the earlier plan, this plan shows a forty foot right of way over adjacent property.

On April 11, 1967, the purchase money of $24,000 was

paid to Eagle after the plan and deed were recorded. Part of the money was raised by a loan of $10,000 to the plaintiffs Mr. Stoner and Guastamachio from the plaintiff Gelles, who was given a second mortgage on the property which was executed March 27, 1967. Gelles was not involved in any application for approval of the plan or for its updating. On April 25, 1968, as a result of action by third persons, the board held a public hearing on a petition to rescind its approval of the plan. One of the items discussed was the lack of a bond or covenant for "municipal betterments." The plaintiffs Mr. Stoner and Guastamachio attended the hearing and filed a covenant at that time with the board. On May 27, 1968, the board voted to rescind its approval of the plan. None of the plaintiffs assented to the rescission, which worked a hardship on Mr. Stoner and Guastamachio because they were unable to develop the subdivision which they had purchased.

The facts of this case have been established by the confirmation of the master's report. It was the duty of the trial judge, as it is now the duty of this court on appeal from the final decree, to see that the final decree is such as the law requires upon the facts found by the master. *Foot* v. *Bauman*, 333 Mass. 214, 219. *Fred C. McClean Heating Supplies, Inc.* v. *Westfield Trade High Sch. Bldg. Comm.* 345 Mass. 267, 271. We hold that on the facts found by the master the plan involved in this case was "constructively" approved by reason of G. L. c. 41, § 81U, as amended through St. 1965, c. 62, which provides in part: "Failure of the planning board either to take final action or to file with the city or town clerk a certificate of such action regarding a plan submitted by an applicant within sixty days after such submission . . . shall be deemed to be an approval thereof." In *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 122, 129, it was held that a plan was "constructively approved because a certificate of the board's action was not filed with the town clerk within sixty days after the submission of the plan," though the planning board had approved the plan within sixty days. Although

the statute in effect at the time of the *Pembroke* case did not expressly refer to the filing of the certificate of the planning board's action with the town clerk within sixty days after the submission of the plan, the court construed the statute to require such filing within that time. The court then concluded that the failure to file the certificate resulted in "constructive" approval without conditions, at least as to a buyer in good faith without knowledge of the conditions, despite the fact that the board had seasonably approved the plan subject to eight conditions. The decision, however, left the way open for action by the planning board under G. L. c. 41, § 81W, "to modify, amend or rescind the constructive approval of the plan." *Id.* at 129.

The factual pattern in the present case is strikingly similar to that in the *Pembroke* case. The plan in the present case was submitted to the planning board on May 13, 1966. On July 8, 1966, less than sixty days later, the plan was approved by the board; however, a certificate of the board's action was not filed with the town clerk until July 18, 1966, sixty-six days after the submission of the plan. On these facts, the plaintiffs are entitled to a certificate stating that the planning board failed to take final action and that the approval resulting from such failure has become final; and the certificate should otherwise comply with the language of G. L. c. 41, § 81V, relating to "constructive" approval. Such certificate and the plan to which it relates are then entitled to be recorded in the registry of deeds under § 81X. The portion of § 81X, as amended through St. 1962, c. 313, relating to an endorsement of approval "dated within six months of the date of the recording" or a certificate "dated within thirty days of the recording, that the approval has not been modified, amended or rescinded, nor the plan changed," does not apply to plans which have been "constructively" approved.

The master found that the plaintiffs Mr. Stoner and Guastamachio, as purchasers, and Gelles, as mortgagee, acquired their respective interests in the land in good faith and for a valuable consideration after the plan was ap-

proved. Therefore, under § 81W [1] the approval of the plan cannot be rescinded without the consent of all of them or their successors in title. "The intention of relevant sections of the Subdivision Control Law is to set up an orderly procedure for definitive action within stated times, and for notice of that action in offices of record within stated times, so that all concerned may rely upon recorded action or the absence thereof within such times." *Selectmen of Pembroke* v. *R. & P. Realty Corp.* 348 Mass. 120, 125. The planning board's purported rescission of its prior approval of the plan is a nullity since the plaintiffs have not consented thereto. Also, the board's vote of rescission on May 27, 1968, expressly purported to rescind the two earlier votes of approval dated July 8, 1966, and January 13, 1967, and did not by its own terms purport to rescind the "constructive" approval which became effective on July 13, 1966, assuming the latter type of approval is subject to rescission. See *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, *supra*, at 128–129; *Kay-Vee Realty Co. Inc.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 169–170.

We hold that the planning board still has authority under § 81U to require the owners to furnish security by bond, deposit or covenant for the construction of ways and the installation of municipal services required for the subdivision shown on the plan. Matters relating to the required security are "in the centralized hands of the city or town." *Gordon* v. *Robinson Homes, Inc.* 342 Mass. 529, 532.

The interlocutory decree is affirmed. The final decree is modified to provide that the plan as submitted on May 13, 1966, was constructively approved because a certificate of the board's action was not filed with the town clerk within sixty days after the submission of the plan; provided, how-

---

[1] General Laws c. 41, § 81W, as appearing in St. 1953, c. 674, § 7, provides in part: "No modification, amendment or rescission of the approval of a plan of a subdivision or change in such plan shall affect the lots in such subdivision which have been sold or mortgaged in good faith and for a valuable consideration subsequent to the approval of the plan, or any rights appurtenant thereto, without the consent of the owner of such lots, and of the holder of the mortgage or mortgages, if any, thereon."

ever, that the decree shall be without prejudice to the board's power to require security under § 81U. As so modified it is affirmed.

*So ordered.*