Kitras *v.* Zoning Administrator of Aquinnah.

MARIA A. KITRAS, trustee,[1] & another[2] *vs.* ZONING
ADMINISTRATOR OF AQUINNAH & others.[3]

Middlesex. December 1, 2008. - February 20, 2009.

Present: IRELAND, SPINA, CORDY, & BOTSFORD, JJ.

*Practice, Civil,* Summary judgment, Action in nature of certiorari. *Subdivision Control,* Appeal, Approval of plan, Decision of planning board. *Mandamus. Martha's Vineyard Commission.*

The trustees of two real estate trusts were not entitled to a judgment declaring that under G. L. c. 40A, § 6, fifth par., they could use and enjoy their property under the zoning bylaws that were in effect at the time they filed their preliminary subdivision plans for the property, where the town's constructive approval of their plans under G. L. c. 41, § 81U, was not sufficient to trigger a freeze of the zoning bylaws absent the town clerk's issuance of a certificate memorializing the approval under G. L. c. 41, § 81V, which the plaintiffs previously and unsuccessfully had sought to compel through an untimely petition for a writ of mandamus. [251-256]

In an action brought by the trustees of two real estate trusts, requesting a judgment declaring that the designations of two districts of critical planning concern by the Martha's Vineyard Commission (commission) pursuant to St. 1977, c. 831, were invalid, the trial judge did not err in dismissing the plaintiffs' claim as untimely, where the plaintiffs' claim, construed as an action in the nature of certiorari under G. L. c. 249, § 4, was not commenced within the sixty-day period required by that statute; and where G. L. c. 240, § 14A, did not serve as an alternative mechanism by which the plaintiffs could challenge the commission's designations. [256-258]

CIVIL ACTION commenced in the Land Court Department on July 29, 2002.

After transfer to the Superior Court Department, the case was heard by *Julian T. Houston,* J., on motions for summary judgment.

After review by the Appeals Court, the Supreme Judicial Court granted leave to obtain further appellate review.

*Arthur P. Kreiger* for the plaintiffs.

[1]Of Bear Realty Trust, and cotrustee of Gorda Realty Trust.

[2]James J. Decoulos, cotrustee of Gorda Realty Trust.

[3]Board of health of Aquinnah; town of Aquinnah; and Martha's Vineyard Commission.

*Ronald H. Rappaport* for town of Aquinnah.

*Eric W. Wodlinger* for Martha's Vineyard Commission.

*Benjamin Fierro, III*, for Home Builders Association of Massachusetts, Inc., amicus curiae, submitted a brief.

SPINA, J. The plaintiffs in this declaratory judgment action are trustees of two real estate trusts that own two parcels of land in the town of Aquinnah (town) on the island of Martha's Vineyard. Pursuant to G. L. c. 40A, § 6, fifth par., and G. L. c. 111, § 127P, they seek to use and enjoy their property in accordance with the local zoning bylaws and health regulations that were in effect at the time they filed preliminary subdivision plans for the land. In addition, the plaintiffs request a declaration that the designations of two "districts of critical planning concern" (DCPCs) by the Martha's Vineyard Commission (commission) pursuant to St. 1977, c. 831 (MVC Act), are invalid.[4] The town, its zoning administrator, its board of health, and the commission (collectively, the defendants), filed motions for summary judgment as to the relevant claims against them. A judge in the Superior Court allowed the defendants' motions and dismissed the plaintiffs' complaint. The Appeals Court affirmed the judgment,[5] but modified it to declare specifically the rights of the parties, namely that the plaintiffs were not entitled to either an eight-year zoning freeze under G. L. c. 40A, § 6, fifth par., or a three-year freeze

---

[4]The purpose of the Martha's Vineyard Commission is to "protect the health, safety, and general welfare of island residents and visitors by preserving and conserving for the enjoyment of present and future generations the unique natural, historical, ecological, scientific, and cultural values of Martha's Vineyard which contribute to public enjoyment, inspiration and scientific study, by protecting these values from development and uses which would impair them, and by promoting the enhancement of sound local economies." St. 1977, c. 831, § 1. Pursuant to § 8 of St. 1977, c. 831, the commission is authorized to "designate specific geographical areas on Martha's Vineyard as districts of critical planning concern." However, there are limitations on such designations. As is pertinent here, "[a] district of critical planning concern may be designated only for . . . an area which possesses unique natural, historical, ecological, scientific, or cultural resources of regional or statewide significance." *Id.*

[5]The Appeals Court stated that there was no merit to the plaintiffs' contentions concerning the designation of certain DCPCs pursuant to St. 1977, c. 831. See *Kitras* v. *Zoning Adm'r of Aquinnah*, 70 Mass. App. Ct. 561, 567 n.10 (2007).

on board of health regulations under G. L. c. 111, § 127P.[6] See *Kitras* v. *Zoning Adm'r of Aquinnah,* 70 Mass. App. Ct. 561, 567 (2007). We granted the plaintiffs' application for further appellate review. For the reasons that follow, we now affirm the judgment of the Superior Court allowing the defendants' motions for summary judgment, as modified to declare the rights of the parties.[7]

1. *Background.* On March 29, 1999, the town's planning board nominated the entire town as a DCPC. See St. 1977, c. 831, § 8. The commission voted on April 22, 1999, to accept this nomination for consideration.[8] See *id.* On June 17, 1999, the commission designated the entire town as a DCPC. See *id.* On January 26, 2000, the planning board then requested that a town-wide rate of development district be nominated as a DCPC, which would have the effect of regulating the rate at which building permits were issued, thereby slowing development within the town. See *id.* On February 24, 2000, the commission approved and designated the building cap as a DCPC. See *id.* The planning board subsequently promulgated implementing regulations, ap-

---

[6]In its decision, the Appeals Court noted that the parties and the Superior Court judge treated the plaintiffs' entitlement to a "freeze" of local health regulations as controlled by the judge's determination on the plaintiffs' entitlement to a zoning freeze. See *Kitras* v. *Zoning Adm'r of Aquinnah, supra* at 567 n.11. In so concluding, the judge stated that G. L. c. 111, § 127P, "provides a similar freeze [to that provided by c. 40A, § 6, fifth par.,] for board of health regulations." The Appeals Court stated that because neither party challenged this ruling on appeal, it became "the law of this case." *Id.,* quoting *A.W. Chesterton Co.* v. *Massachusetts Insurers Insolvency Fund,* 445 Mass. 502, 506 (2005). We agree that our conclusion with respect to the plaintiffs' entitlement to a zoning freeze would be controlling as to their entitlement to a freeze of local health regulations. Because the plaintiffs have asserted that no amendments to board of health regulations are involved in this case, we need not consider the specifics of this issue further.

[7]We acknowledge the amicus brief filed in support of the plaintiffs by the Home Builders Association of Massachusetts, Inc.

[8]Pursuant to St. 1977, c. 831, § 9, "[t]he acceptance of a nomination for consideration for designation of a district of critical planning concern shall suspend the power of a municipality to grant development permits applicable within the district; provided, however, that until regulations for the district adopted pursuant to section ten have become effective, a municipality may grant development permits, applicable within the district if [specified criteria are met]." A "[d]evelopment permit" is defined as "any permit, license, authority, endorsement, or permission required from a municipal agency prior to the commencement of construction, improvement, or alteration made to buildings or land." St. 1977, c. 831, § 6.

proved by the commission, with respect to these two DCPCs, and the town incorporated these regulations into its zoning bylaws. See *id.* at § 10. While these designations and related regulations were being approved and adopted, a "moratorium" suspended the town's authority to issue development permits from April 22, 1999, until May 23, 2000, with certain limited exceptions set forth in St. 1977, c. 831, § 9.

Nonetheless, on June 29, 1999, the plaintiffs submitted preliminary subdivision plans to the planning board and the local board of health by hand delivering the plans to the town clerk pursuant to G. L. c. 41, § 81S. On June 30, 1999, the town approved changes to its zoning bylaws, including a restriction on building heights and an expansion of frontage requirements. On January 28, 2000, the plaintiffs submitted definitive subdivision plans to the planning board and the board of health in the same manner as they had submitted their preliminary plans.

On June 5, 2000, after the moratorium had expired, the plaintiffs sent letters (one for each real estate trust) to the town clerk requesting the issuance of certificates of constructive approval pursuant to G. L. c. 41, § 81V,[9] stating that the planning board had failed to act in a timely manner on the plaintiffs' *definitive* subdivision plans, and, therefore, these plans were to be deemed approved. Citing the planning board's inability to approve subdivision plans during the moratorium, the town clerk issued identical letters denying the plaintiffs' requests for certificates.

On August 10, 2000, the planning board held a hearing on

---

[9]General Laws c. 41, § 81V, states, in pertinent part: "In case of approval of a plan by action of the planning board, after the expiration of twenty days without notice of appeal . . . , or if appeal has been taken after the entry of a final decree of the court sustaining the approval of such plan, the planning board shall cause to be made upon the plan a written endorsement of its approval. In case of the approval of a plan by reason of the failure of the planning board to act within the time prescribed [in G. L. c. 41, § 81U], the city or town clerk shall, after the expiration of twenty days without notice of appeal . . . , or, if appeal has been taken, after receipt of certified records of the . . . court indicating that such approval has become final, issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final. The plan bearing such endorsement or the plan and such certificate, as the case may be, shall be delivered by the planning board, or, in the case of the certificate, by the city or town clerk, to the person who submitted such plan."

the plaintiffs' *preliminary* subdivision plans. The planning board denied the plans on the grounds that the plaintiffs were not present at the hearing, and that frontage and access requirements with respect to one of the parcels of land were inadequate.

On May 8, 2001, the plaintiffs again requested in writing that the town clerk issue certificates of constructive approval of their *definitive* subdivision plans. On May 25, 2001, the town clerk denied the requests, stating that the planning board had acted on, and had denied, the subdivision plans on August 10, 2000. In doing so, the town clerk mistakenly referred to the action taken by the planning board on the plaintiffs' *preliminary* subdivision plans. The planning board never acted on the definitive subdivision plans filed by the plaintiffs on January 28, 2000.

On August 23, 2002, the plaintiffs filed in the Superior Court a petition for a writ of mandamus to compel the town clerk to issue certificates pursuant to G. L. c. 41, § 81V, documenting constructive approval of their definitive subdivision plans. See G. L. c. 249, § 5. A judge granted the plaintiffs' petition, concluding that the definitive subdivision plans were constructively approved as a result of the town's inaction following the expiration of the moratorium on May 23, 2000.[10] On appeal from the allowance of the mandamus action, a panel of the Appeals Court, in an unpublished memorandum and order pursuant to its rule 1:28, reversed the Superior Court judgment, concluding that the plaintiffs' fifteen-month delay in bringing their mandamus action was unreasonable.[11] See *Kitras* v. *Town Clerk of Aquinnah*, 61 Mass. App. Ct. 1121 (2004). The plaintiffs remained without

---

[10]On September 27, 2002, the planning board acted pursuant to G. L. c. 41, § 81W, to "rescind whatever constructive approvals had occurred." However, it appears that the planning board did not record its decisions pending further proceedings on the defendants' appeal in the mandamus action.

[11]The Appeals Court did not reach the other issues raised in the town clerk's appeal from the allowance of the mandamus action, including whether the judge erred in ruling that the plaintiffs had properly submitted definitive subdivision plans to the planning board under G. L. c. 41, § 81O, where the plaintiffs had failed either to deliver their plans at a regularly scheduled meeting of the planning board or to send the plans to the planning board by registered mail. For purposes of the present proceedings, we assume, without deciding, that the plaintiffs' definitive subdivision plans were properly submitted to the planning board. In their surreply brief, the defendants have stated that this issue is moot if the judgment of the Superior Court is affirmed.

any certificates documenting constructive approval of their definitive subdivision plans.

In the meantime, on July 29, 2002, the plaintiffs filed a separate complaint in the Land Court in which they sought, among other things, a declaratory judgment that, due to inaction by the planning board, their definitive subdivision plans had been constructively approved, and the parcels of land at issue were entitled to the benefit of a zoning freeze pursuant to G. L. c. 40A, § 6, fifth par.,[12] commencing on the date their preliminary subdivision plans were submitted, even in the absence of certificates from the town clerk pursuant to G. L. c. 41, § 81V. The plaintiffs also sought a judgment declaring that the commission's designations of the DCPCs were invalid because the DCPCs served no regional purpose in protecting the island of Martha's Vineyard.[13] On January 26, 2004, the Land Court action was transferred to the Superior Court pursuant to G. L. c. 211B, § 9.

In allowing the defendants' motions for summary judgment,[14] the judge stated that constructive approval of the plaintiffs'

---

[12]General Laws c. 40A, § 6, fifth par., states, in relevant part: "If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law . . . the land shown on such plan shall be governed by the applicable provisions of the zoning ordinance or by-law . . . in effect at the time of the first such submission while such plan or plans are being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval . . . ."

[13]The plaintiffs have properly acknowledged that the implementing regulations of a DCPC are not subject to a zoning freeze under G. L. c. 40A, § 6, fifth par. See St. 1977, c. 831, § 3; Home Bldrs. Ass'n of Cape Cod, Inc. v. Cape Cod Comm'n, 441 Mass. 724, 733 n.13 (2004); Island Props., Inc. v. Martha's Vineyard Comm'n, 372 Mass. 216, 228-229, 232 (1977).

[14]The judge noted that the plaintiffs had appeared pro se on behalf of the real estate trusts for which they served as trustees. The defendants had argued that with respect to at least one of the trusts, the plaintiffs were not its beneficiaries, and, therefore, it was improper for the plaintiffs, who are not attorneys, to legally represent the trusts' interests. See generally LAS Collection Mgt. v. Pagan, 447 Mass. 847, 849-850 (2006) (discussing "practice of law" by members of bar). Cf. Varney Enters., Inc. v. WMF, Inc., 402 Mass. 79, 81-82 (1988) (corporation may not be represented in judicial proceedings by corporate officer who is not licensed attorney, except in small claims matters). The judge declined to reach this issue because the court was ruling in favor of the defendants on other grounds. The defendants have raised this matter again

subdivision plans was not sufficient to trigger a freeze of the town's zoning bylaws as of June 29, 1999, absent corresponding certificates from the town clerk. Further, the judge continued, it was undisputed that the plaintiffs never obtained, nor could they obtain, such certificates given the resolution of their mandamus action. With respect to the DCPCs, the judge concluded that the plaintiffs were not entitled to declaratory relief because their action was untimely and they had failed to satisfy their heavy burden of proving that the DCPCs were invalid under the MVC Act.

2. *Standard of review.* "The standard of review of a grant of summary judgment is whether, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and the moving party is entitled to judgment as a matter of law." *Cargill, Inc.* v. *Beaver Coal & Oil Co.*, 424 Mass. 356, 358 (1997). See Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002). The moving party bears the burden of affirmatively demonstrating the absence of a triable issue. See *Pederson* v. *Time, Inc.*, 404 Mass. 14, 17 (1989). Any doubts as to the existence of a genuine issue of material fact are to be resolved against the party moving for summary judgment. See *Attorney Gen.* v. *Bailey*, 386 Mass. 367, 371, cert. denied, 459 U.S. 970 (1982).

3. *Zoning freeze.* The plaintiffs first contend that, pursuant to G. L. c. 40A, § 6, fifth par., it is the final approval of definitive subdivision plans, rather than the endorsement of such approval, that triggers the eight-year zoning freeze for the land shown on such plans. We disagree with the plaintiffs' view as to when and how this zoning freeze becomes effective.

Preliminarily, before analyzing the particulars of subdivision plan approval, we point out that the Zoning Act, G. L. c. 40A, and the subdivision control law, G. L. c. 41, §§ 81K-81GG, share a similar purpose, which is "to regulate the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities." *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 726 (2000). As is relevant here, G. L. c. 40A, § 6,

---

during appellate proceedings. Given that the plaintiffs now are represented by counsel, the issue is moot, but we caution the plaintiffs against acting without an attorney in legal proceedings involving the real estate trusts.

fifth par., relieves a developer who has submitted a subdivision plan to a local planning board from compliance with future changes to zoning bylaws by (1) freezing the applicable bylaws governing the land shown on the subdivision plan as of the time when the plan is first submitted to the planning board and while the plan is being processed under the subdivision control law (the process freeze); and (2) freezing those same zoning bylaws for eight years from the date of the endorsement of final approval of a definitive plan. The intent of this statutory provision is "to protect landowners and developers 'from the "practice in some communities of adopting onerous amendments to the zoning by-law after submission of a preliminary plan which is opposed by segments within the community." ' " *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640-641 (2000), quoting *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71, 76 (1997).

We turn now to consideration of the subdivision control law to clarify when constructive approval of a definitive subdivision plan becomes final and when a developer thereby becomes entitled to an eight-year zoning freeze under G. L. c. 40A, § 6, fifth par. The statutory scheme is intended to "set up an orderly procedure for definitive action within stated times, and for notice of that action in offices of record within stated times, so that all concerned may rely upon recorded action or the absence thereof within such times." *Selectmen of Pembroke* v. *R. & P. Realty Corp.*, 348 Mass. 120, 125 (1964). General Laws c. 41, § 81U, fifth par., provides that a definitive subdivision plan is deemed to be approved if the planning board fails "either to take final action or to file with the city or town clerk a certificate of such action on the definitive plan within ninety days after such submission." See *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 713-714 (1971) (failure of planning board to comply with requirements of G. L. c. 41, § 81U, results in "constructive" approval of subdivision plan); *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 168 (1969) (same). Then, pursuant to G. L. c. 41, § 81V, in those instances where a plan has been deemed approved because the planning board has failed to act, "the city or town clerk shall, after the expiration of twenty days without notice of appeal . . . or, if appeal has been taken, after receipt of

certified records of the . . . court indicating that such approval has become final, issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final."[15] The import of these statutory provisions is that constructive approval under § 81U can become final in one of two ways: (1) "the expiration of twenty days without notice of appeal"; or (2) if there has been an appeal, a court decision upholding the constructive approval. G. L. c. 41, § 81V. Either way, the town clerk then shall "issue a certificate stating . . . that the approval . . . has become final." *Id.* See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow, supra* at 169 (where subdivision plan constructively approved and no appeal is taken, petitioner entitled to certificate from town clerk under § 81V).

The language of § 81V does not provide that a town clerk transforms a constructive approval due to planning board inaction into a final approval by issuing a certificate. Rather, the town clerk issues the certificate *after* the constructive approval "has become final." G. L. c. 41, § 81V. In other words, the issuance of the certificate officially memorializes that approval has become final, either by expiration of the twenty-day appeal period or by a court decision resolving the appeal. The issuance of the certificate is not an act that, itself, confers finality. Rather, it evidences finality. A contrary determination, namely that if a town clerk fails to issue a certificate, then there is no final approval of a definitive subdivision plan, would give town clerks the authority to decide which plans receive final approval and which ones do not. Final approval of a subdivision plan is determined by the planning board through its own action or inaction. See G. L. c. 41, § 81M. See also *Beale* v. *Planning Bd. of Rockland*, 423 Mass. 690, 691 (1996) (planning board acted within its authority in disapproving definitive subdivision plan that would violate applicable zoning bylaw); *Canter* v. *Planning Bd. of Westborough*, 4 Mass. App. Ct. 306, 308 (1976) ("planning board may not disapprove a plan not shown to violate the regulations of the planning board or the requirements of the board of health").

---

[15]The certificate issued by a town clerk enables a developer to record the approved subdivision plan in the registry of deeds. See G. L. c. 41, § 81X; *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 714 (1971).

Here, the planning board never acted on the definitive subdivision plans filed by the plaintiffs on January 28, 2000. Such inaction resulted in constructive approval of the plans pursuant to G. L. c. 41, § 81U, fifth par. That constructive approval of the plaintiffs' definitive subdivision plans became final when the twenty-day appeal period expired. See G. L. c. 41, § 81V. However, the eight-year zoning freeze under G. L. c. 40A, § 6, fifth par., did not commence because the town clerk did not issue a certificate memorializing final approval of the subdivision plans. The language of § 6 provides that the land shown on a definitive subdivision plan shall be entitled to a statutory zoning freeze "if such definitive plan or an amendment thereof is finally approved, for eight years *from the date of the endorsement of such approval*" (emphasis added). G. L. c. 40A, § 6, fifth par.

If a subdivision plan is approved by action of the planning board, then "the planning board shall cause to be made upon the plan a written endorsement of its approval." G. L. c. 41, § 81V. We recognize that there is no "endorsement" when a definitive subdivision plan is constructively approved through the inaction of a planning board. Nonetheless, we agree with the cogent reasoning of the Appeals Court that, while not identical, the certificate issued by the town clerk in such circumstances is the "functional equivalent[]" of a planning board's endorsement. *Kitras* v. *Zoning Adm'r of Aquinnah*, 70 Mass. App. Ct. 561, 566 (2007). "[E]ach evidences final approval [of a definitive subdivision plan], triggers the eight-year zoning freeze, entitles the party to record the plan, and triggers definite time periods for appeals." *Id.*, citing G. L. c. 41, §§ 81V, 81X, 81BB, and G. L. c. 40A, § 6, fifth par. Moreover, it is the planning board's endorsement or the town clerk's certificate, as the case may be, that, by triggering the eight-year zoning freeze, terminates the process freeze that had been in effect since the first submission of the subdivision plan. Absent the planning board's endorsement or the town clerk's certificate, there is no way to identify, with precision, when the eight-year zoning freeze commences and terminates.

We add that a town clerk has a mandatory obligation to issue a certificate evidencing final approval of a definitive subdivi-

sion plan when a planning board fails to act within the prescribed time period. General Laws c. 41, § 81V, explicitly states that the town clerk "*shall . . .* issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final" (emphasis added). Such language does not give the clerk any discretion in this matter. If a town clerk refuses to issue a certificate, a developer can seek relief in the nature of mandamus. See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow, supra* (mandamus action appropriate to compel town clerk to certify, in accordance with G. L. c. 41, § 81V, that subdivision plan was constructively approved). See also *Lutheran Serv. Ass'n of New England, Inc.* v. *Metropolitan Dist. Comm'n*, 397 Mass. 341, 344 (1986) (mandamus action "is appropriate to compel a public official to perform an act which the official has a legal duty to perform"); *Kupperstein* v. *Planning Bd. of Cohasset*, 66 Mass. App. Ct. 905, 905-906 (2006).

The plaintiffs here sought such relief, and they obtained it when a judge in the Superior Court granted their petition for a writ of mandamus to compel the town clerk to issue certificates pursuant to G. L. c. 41, § 81V. However, the Appeals Court reversed that determination on the ground that the plaintiffs' petition was untimely. See *Kitras* v. *Town Clerk of Aquinnah*, 61 Mass. App. Ct. 1121 (2004). We denied the plaintiffs' application for further appellate review. 442 Mass. 1114 (2004). The plaintiffs are now bound by the final judgment of the Appeals Court, and, in the absence of certificates, the eight-year zoning freeze under G. L. c. 40A, § 6, fifth par., is not triggered.[16] Moreover, the effect of the final judgment is to end the process-

---

[16]Our decision in *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71 (1997), is not to the contrary. We opined in that case that "[o]nce a definitive subdivision plan is 'finally approved,' . . . the eight-year zoning freeze is secure." *Id.* at 75, quoting G. L. c. 40A, § 6, fifth par. There, unlike here, the planning board actually approved the definitive plan and then endorsed it. See *Heritage Park Dev. Corp.* v. *Southbridge, supra* at 72-73. That endorsement evidenced final approval of the subdivision plan and secured the eight-year zoning freeze in accordance with G. L. c. 40A, § 6, fifth par. The plaintiffs in the present proceedings never obtained a certificate evidencing final approval of their definitive subdivision plans, so the eight-year zoning freeze did not become effective under § 6, fifth par.

ing of the plaintiffs' definitive subdivision plans under the sub-division control law, and, as a consequence, the process freeze under § 6, fifth par., lapses. We conclude that the plaintiffs are not entitled to a declaration that they may use and enjoy their property under the zoning bylaws that were in effect at the time they filed their preliminary subdivision plans for the land.

4. *Designation of the DCPCs.* The plaintiffs next contend that the judge erred in concluding that their challenge to the com-mission's designation of the two DCPCs was untimely. We dis-agree.

As an initial matter, we point out that nothing in St. 1977, c. 831, permits a landowner to appeal from the commission's designation of specific areas on Martha's Vineyard as DCPCs. Section 18 of the MVC Act states that "[a]ny party aggrieved by a determination of the commission may appeal to the superior court within twenty days after the commission has sent *the development applicant* written notice, by certified mail, of its decision and has filed a copy of its decision with the town clerk of the town in which the *proposed development* is located" (emphasis added). St. 1977, c. 831, § 18. The plain language of this provision indicates that the right to appeal from a determin-ation by the commission applies only to "developments of regional impact," not to DCPCs.[17]

In the alternative, an action in the nature of certiorari may be brought pursuant to G. L. c. 249, § 4, to "correct errors in pro-ceedings which are not according to the course of the common law, which proceedings are not otherwise reviewable by motion or by appeal." Such an action "shall be commenced within sixty days next after the proceeding complained of." G. L. c. 249, § 4. Here, the commission designated the entire town as

---

[17]The preservation and enhancement of the unique values of Martha's Vineyard by the commission are twofold. First, the commission has the authority to designate DCPCs, and it may adopt regulations for their control pursuant to §§ 8-11 of the MVC Act. See St. 1977, c. 831, §§ 1, 3. Second, the commis-sion has the authority, see *id.*, to recognize "developments of regional impact," and it may specify conditions and modifications necessary for their control pursuant to §§ 12-16 of the MVC Act. In connection with those tasks, the commission reviews "all applications for development permits for develop-ments of regional impact" and decides whether they should be granted. See *id.* at § 14.

a DCPC on June 17, 1999. It designated the building cap as a DCPC on February 24, 2000. Even allowing the plaintiffs' action to date back to July 29, 2002, when they filed their original complaint in the Land Court,[18] their action was untimely.[19]

The plaintiffs assert that G. L. c. 240, § 14A, establishes the right of a landowner to challenge "the validity of a municipal ordinance, by-law or regulation, passed or adopted under the provisions of [G. L. c. 40A] or under any special law relating to zoning, so called, which purports to restrict or limit the present or future use, enjoyment, improvement or development of such land, or any part thereof." The plaintiffs argue that the impact of the DCPCs is to restrict the use, enjoyment, and development of their property. While this may be true, G. L. c. 240, § 14A, is a "remedial statute" that is intended to "permit any landowner to petition for a decision concerning the validity or invalidity of any zoning restriction applicable to his land." *Sturges* v. *Chilmark*, 380 Mass. 246, 249 (1980). We stated in *Island Props., Inc.* v. *Martha's Vineyard Comm'n*, 372 Mass. 216, 229 (1977), that the MVC Act is a "polar opposite" from those local enact-

[18]In count III of their first amended complaint filed in the Land Court, the plaintiffs challenged only the commission's designation of the entire town as a DCPC. The town filed a motion to dismiss the first amended complaint because the plaintiffs had failed to join the commission as a necessary party. In response, the plaintiffs filed a motion to amend their complaint to add the commission as a defendant and to add a claim challenging the designation of the building cap as a DCPC. A judge in the Land Court denied this motion to amend, and he transferred the entire action to the Superior Court. The plaintiffs then filed a new complaint on April 20, 2004, in which the commission was added as a defendant and claims challenging both of the DCPCs were raised.

[19]The plaintiffs assert that none of the town's affected landowners ever received direct notice of the designation of the DCPCs, and therefore, the plaintiffs' action should not be deemed untimely. They acknowledge that the commission's designation of a DCPC does not require written notice to affected property owners. Contrast St. 1977, c. 831, § 18 (describing, for appeal purposes, notification to permit applicant of commission's decision on proposed development of regional impact). Pursuant to St. 1977, c. 831, § 8, "[t]he commission may, after notice to all municipalities which include within their boundaries any part of the area of a proposed district of critical planning concern and after notice and *public hearing* pursuant to [G. L. c. 30A, § 2], designate specific geographical areas on Martha's Vineyard as districts of critical planning concern" (emphasis added). Such notice and public hearing would alert landowners that the commission is considering the designation of a DCPC and that a decision on the matter will be forthcoming.

ments contemplated by the Zoning Act, G. L. c. 40A.[20] "Not only is chapter [831] a statute of the General Court; the reason of its being is to import regional — island-wide and Statewide — considerations into the protection of the land and water of Martha's Vineyard, considerations which, the Legislature could believe, the towns themselves had not and would not severally bring to bear. . . . The regional theme runs through the whole chapter from the makeup of the commission through the ultimate standards and regulations." *Id.* We conclude that G. L. c. 240, § 14A, enables a property owner to challenge the validity and scope of a municipal ordinance, bylaw, or regulation; it does not serve as a mechanism by which a landowner can challenge the designation of a DCPC.

5. *Conclusion.* There was no error in the Superior Court judge's allowance of the defendants' motions for summary judgment. The judgment below shall be modified to declare that the plaintiffs are not entitled to an eight-year zoning freeze under G. L. c. 40A, § 6, fifth par., or a three-year freeze of board of health regulations under G. L. c. 111, § 127P. As so modified, the judgment is affirmed.

*So ordered.*

---

[20]We recognize that in *Island Props., Inc.* v. *Martha's Vineyard Comm'n,* 372 Mass. 216 (1977), the court analyzed St. 1974, c. 637, "An Act protecting land and water on Martha's Vineyard." This enactment, as amended by St. 1976, c. 219, was repealed and replaced by St. 1977, c. 831. See St. 1977, c. 831, §§ 25, 27. The analysis set forth in *Island Props., Inc.* v. *Martha's Vineyard Comm'n, supra,* remains applicable to the present proceedings.