RIDGELEY MANAGEMENT CORPORATION[1] *vs.* PLANNING BOARD
OF GOSNOLD & others[2] (and a companion case[3]).

No. 11-P-936.

Suffolk. February 9, 2012. - November 21, 2012.

Present: SIKORA, CARHART, & SULLIVAN, JJ.

*Subdivision Control,* Planning board, Regulations, Approval of plan. *Practice,
Civil,* Subdivision control appeal, Judgment on the pleadings, Action in
nature of mandamus, Motion to dismiss. *Municipal Corporations,* Planning
board. *Planning Board.*

The defendants were entitled to the dismissal of the complaints in two civil
actions brought in the Land Court challenging the act of the town planning
board (board) of returning the plaintiff's definitive subdivision plan (plan)
without having taken action on it, on the ground that the board lacked
authority to act on the plan given that it had never adopted rules and
regulations for implementation of the subdivision control process, where
the subdivision control law did not take effect in the town until the date it
adopted rules and regulations, subsequent to the submission of the plaintiff's
plan [797-799]; where the plaintiff was not entitled to a zoning process
freeze and health regulations freeze in the absence of a valid and effective
local subdivision control process [799-800]; where equitable considerations
could not afford relief to the plaintiff, in that fact finding about the defend-
ants' motive was not possible given that the case proceeded to judgment
on the pleadings, the planning board did not violate any objective standard
of law governing its duties, and deeply rooted rule and policy prohibit the
estoppel of a governmental body's performance of its public health, safety,
and welfare duties [800-802]; and where mandamus relief was not avail-
able given the absence of a valid municipal subdivision control law [802].

CIVIL ACTION commenced in the Land Court Department on
February 26, 2009.

The case was heard by *Charles W. Trombly, Jr.,* J., on a mo-
tion for judgment on the pleadings.

[1]General partner of Ridgeley Farm Limited Partnership.

[2]Board of health of Gosnold and town of Gosnold.

[3]Ridgeley Management Corporation, General Partner of Ridgeley Farm
Limited Partnership *vs.* Town Clerk of Gosnold.

CIVIL ACTION commenced in the Land Court Department on May 24, 2010.

A motion to dismiss was heard by *Charles W. Trombly, Jr.*, J.

*Sander A. Rikleen (John J. Griffin, Jr.*, with him) for the plaintiff.

*Daniel C. Perry* for the defendants.

SIKORA, J. The Elizabeth Islands extend in a chain southwesterly from the heel of Cape Cod toward Rhode Island Sound. They separate Buzzards Bay on the west from Vineyard Sound on the east. The nine islands are sparsely settled. The entire small archipelago constitutes a single municipality: the town of Gosnold (town or Gosnold). Our case presents a subdivision dispute on the most populous member of the chain, Cuttyhunk Island.

*Background.* 1. *Facts.* The allegations, answers, and incorporated documents of the parties' Land Court pleadings establish the following undisputed facts. The plaintiff, Ridgeley Management Corporation (Ridgeley), is a general partner of Ridgeley Farm Limited Partnership (partnership). The partnership owns the Cuttyhunk Island tract known as Ridgeley Farm situated within a residential zoning district.

On May 22, 2000, the annual town meeting of Gosnold voted to authorize the board of selectmen (selectmen) to act as a planning board. The planning board did not adopt subdivision rules and regulations until November 13, 2009. Before the authorization of May 22, 2000, the selectmen had entertained occasional subdivision plans and endorsed them as "approval not required."[4] That practice continued through the nine-year interim between the authorization of May of 2000, and the promulgation of subdivision rules and regulations in November of 2009.[5]

Meanwhile, on May 12, 2008, Ridgeley submitted to the "Selectmen acting as the Planning Board" a preliminary plan for the subdivision of the Ridgeley Farm land into six lots served by two existing, unimproved roadways. As required by law, Ridgeley submitted the preliminary plan also to the town

---

[4] In their answer, the defendants admitted that this endorsement process dated from "at least as early as 1990."

[5] Ridgeley's complaint contains as exhibits copies of one such endorsement in 1999 and three in 2008.

clerk and to the selectmen in their additional capacity as the board of health. One week later, on May 19, the annual town meeting amended the zoning by-law to include minimum lot sizes and frontage requirements. On July 7, 2008, the planning board approved Ridgeley's preliminary plan.

On December 3, 2008, Ridgeley submitted its definitive subdivision plan to the planning board. On February 9, 2009, the selectmen, acting as the board of health, adopted regulations to protect groundwater resources from hazardous material discharges. The additional regulations heightened the safety requirements for newly constructed fuel storage tanks and related piping.

Also on February 9, 2009, the planning board returned the definitive plan to Ridgeley without action. By cover letter, it explained that it lacked authority to act on the plan because it never had adopted rules and regulations for implementation of the subdivision control process, as required by statute. It advised that Ridgeley could resubmit the plan for approval after the adoption of rules and regulations.

It is undisputed that on November 13, 2009, the planning board adopted a detailed scheme of subdivision control regulations occupying fifteen single-spaced pages. They prescribed the procedure for subdivision application; reserved authority to impose design standards for roads, easements, storm water management, water supply and sewage disposal, open space preservation, recreational areas, and the protection of natural landscape features; and reserved authority for the planning board to require improvements from a developer, including adequate access by public and private ways, road quality, water supply, sewage disposal, storm water management, sidewalks, lighting, and road signage.

2. *Litigation.* On February 26, 2009, shortly after the return of its definitive plan, Ridgeley brought suit in the Land Court against the planning board, the board of health, and the town, upon three grounds: (1) a claim for annulment or "such other decree as justice and equity may require" authorized by G. L. c. 41, § 81BB, as appearing in St. 1957, c. 199, § 2, to parties aggrieved by a planning board's treatment of a subdivision plan, upon the allegation that the planning board's use of its

own failure to adopt subdivision control regulations constituted arbitrary and inequitable abuse of Ridgeley's right to consideration of its plan; (2) a claim for declaratory judgment pursuant to G. L. c. 240, § 14A, and G. L. c. 231A, to the effect that (a) its plan was entitled to the zoning standards in force at the time of the submission of its preliminary plan, in accordance with G. L. c. 40A, § 6 (the so-called "zoning process freeze"); and (b) its plan was entitled to the status of the board of health regulations in force on the same date, in accordance with G. L. c. 111, § 127P (the so-called "health regulations freeze"); and (3) a claim for an order of mandamus pursuant to G. L. c. 249, § 5, compelling the planning board to adopt subdivision control rules and regulations and to complete the consideration of its definitive plan by approval "in the form as filed."

While the first action was pending, Ridgeley brought a second complaint in Land Court for an order of mandamus to compel the town clerk to issue a certificate of approval of the definitive plan. The theory of the action was that the planning board had failed to act upon the definitive plan for more than ninety days after its submission so as to entitle the plan to constructive approval pursuant to G. L. c. 41, § 81U, and Ridgeley to a conforming certificate pursuant to G. L. c. 41, § 81V.

In the first action, the defendants answered the complaint and moved for judgment on the pleadings under Mass.R.Civ.P. 12(c), 365 Mass. 754 (1974). Ridgeley opposed.[6] After a hearing, a judge of the Land Court concluded that the statute authorizing local acceptance of subdivision control, G. L. c. 41, § 81N, required *both* the establishment of a planning board *and* the planning board's adoption of rules and regulations. The failure of the planning board to accomplish the second requirement left the town short of adoption of the subdivision control law and the planning board without authority to consider subdivision plans. The judge dismissed Ridgeley's complaint. Shortly after-

---

[6]Shortly before the hearing on the motion for judgment on the pleadings, Ridgeley filed a so-called "cross motion" for summary judgment along with a supportive statement of undisputed facts and extensive verified papers. The Land Court judge confined his reasoning and conclusion to the defendants' motion for judgment on the pleadings. Ridgeley's summary judgment arguments closely resemble its arguments against the defendants' motion for judgment on the pleadings. The judge's reasoning would apply to both motions.

ward he granted the town clerk's motion pursuant to Mass.R. Civ.P. 12(b)(6) to dismiss the separate mandamus action upon the ground of issue preclusion, i.e., that the absence of the planning board's authority to consider Ridgeley's subdivision plan necessarily eliminated any consequent duty of the town clerk to issue a certificate of approval of it. This appeal of the two judgments followed.

*Analysis.* On appeal, Ridgeley renews its arguments that Gosnold effectively accepted a system of subdivision control law by creation of the planning board in 2000; and that its definitive plan is entitled to consideration with the benefit of the statutory freezes of zoning standards and the board of health regulations as of the time of submission of the preliminary plan, even though the planning board otherwise may apply the subdivision control rules and regulations adopted in November of 2009. Ridgeley contends also that the town should not benefit from an inequitable failure to implement the subdivision control law and from the resulting retroactive imposition of more demanding zoning and health requirements.

1. *Standard of review.* "A defendant's rule 12(c) motion is actually a motion to dismiss . . . that argues that the complaint fails to state a claim upon which relief can be granted." *Jarosz* v. *Palmer*, 436 Mass. 526, 529 (2002) (citation and quotation marks omitted). As with the allowance of a motion under rule 12(b)(6), we review the ruling de novo. See *Harhen* v. *Brown*, 431 Mass. 838, 845 (2000); *Housman* v. *LBM Financial, LLC*, 80 Mass. App. Ct. 213, 216 (2011). We draw our facts from the well pleaded allegations of the complaint and the admissions or failures of denial presented by the answer. See Mass.R.Civ.P. 8(a), (b), (d), as amended, 430 Mass. 1601 (1999). Those sources have provided the body of recounted undisputed facts. The appellate issues are questions of law.

2. *Effective adoption of subdivision control law.* General Laws c. 41, § 81N, governs the adoption of subdivision control law by a municipality. The following language, as amended through St. 1959, c. 144, is pertinent to our case.

"[T]he subdivision control law shall be in effect in . . . every town . . . which . . . establishes a planning

board. . . . The subdivision control law, however, shall
not become effective in any city or town . . . until the
planning board of such city or town shall have notified the
register of deeds and the recorder of the land court . . .
that the planning board has adopted its rules and regula-
tions as provided section in eighty-one Q and shall have
furnished the said register and recorder [with certified cop-
ies of the town meeting vote accepting subdivision control
law and certified copies of the subdivision control rules
and regulations]."

Upon the basis of the first sentence quoted, Ridgeley contends
that the subdivision control law became effective in Gosnold at
the time of the town meeting vote of May of 2000. Upon the
basis of the second sentence quoted, the defendants set the ef-
fective date at the adoption of rules and regulations in November
of 2009.

Two methods of interpretation support the later date as the
time of effectuation. As a matter of literal analysis, we impute
meaning to each substantive provision of a statute. See, e.g.,
*Negron* v. *Gordon*, 373 Mass. 199, 202-206 (1977), and cases
cited; *Sperounes* v. *Farese*, 449 Mass. 800, 806-807 (2007). In
addition, if multiple provisions address the same subject, we
should construe them to produce a harmonious result in the
service of a visible legislative purpose. See, e.g., *School Comm.
of Gloucester* v. *Gloucester*, 324 Mass. 209, 212 (1949); *Board
of Educ.* v. *Assessors of Worcester*, 368 Mass. 511, 513-514
(1975). Those guidelines lead to the conclusion that the creation
of a planning board is a necessary but not sufficient act for
municipal acceptance of the subdivision control law. Both sen-
tences quoted become consistently meaningful if they require
the creation of the planning board *and* its adoption of rules and
regulations.[7]

As a practical or functional matter, effective municipal subdivi-
sion control law must have regulations for substance and
standards. The effectuation provision of § 81N contemplates
"rules and regulations as provided in section eighty-one Q." In
turn, § 81Q requires "reasonable rules and regulations," as

---

[7]Ridgeley's contrary view would place the sentences in conflict and render
the second one superfluous.

amended through St. 1965, c. 64, to set standards for "location, construction, width and grades of the proposed ways shown on a plan and the installation of municipal services," inserted by St. 1953, c. 674, § 7. The section permits rules and regulations upon other subjects, including the distribution of utility services below and above ground, accommodation of solar energy systems, street lighting, and police, fire, and other municipal equipment. They may extend to "standards for the orientation of new streets, lots and buildings," to setback requirements, and to vegetation height and placement. G. L. c. 41, § 81Q, as amended by St. 1985, c. 637, § 9. If consistent with zoning, the rules and regulations may limit a subdivision lot to one dwelling structure. By nature, then, the substance of subdivision control requires detailed codification *"so that owners may know in advance what is or may be required of them"* (emphasis added). *Sparks* v. *Planning Bd. of Westborough*, 2 Mass. App. Ct. 745, 748 (1974), quoting from *Castle Estates, Inc.* v. *Park & Planning Bd. of Medfield*, 344 Mass. 329, 334 (1962). No common law of subdivision control is available as a substitute for an omitted code of rules and regulations.

3. *Statutory freeze entitlements.* Ridgeley maintains that its entitlement to a zoning process freeze under G. L. c. 40A, § 6, and a health regulations freeze under G. L. c. 111, § 127P, operates even in the absence of subdivision rules and regulations.[8] It accurately points out the purpose of the freeze provisions "to protect landowners from 'the practice in some communities of adopting onerous amendments to the zoning by-law after submission of a preliminary plan which is opposed by segments within the community.' " *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71, 76 (1997), quoting from 1972 House Doc. No. 5009, at 38, Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act.

However, both statutory sources furnish the subdivision

---

[8]It reasons that "[n]othing in G. L. c. 40A, § 6, par. 5 (zoning freeze) and G. L. c. 111, § 127P (health code freeze) depend[s] upon, or even refer[s] to subdivision rules and regulations. So long as the landowner does what is required of it (filing its Definitive Subdivision Plan within seven months of its Preliminary Subdivision Plan), it is entitled to a freeze while the subdivision plan is being processed under the subdivision control law."

developer a freeze upon the premise of a valid and operative subdivision control process. The zoning process freeze of c. 40A, § 6, fifth par., as amended by St. 1982, c. 185, contemplates submission of the preliminary and (within seven months) definitive plans for approval "under the subdivision control law," and maintains the zoning standards as of the first submission "while such plan or plans are being processed under the subdivision control law." See *Kitras* v. *Zoning Administrator of Aquinnah*, 453 Mass. 245, 251-252 (2009) (discussing eight-year freeze as a consequence of pendency of valid local subdivision control process); *Bernstein* v. *Planning Bd. of Stockbridge*, 76 Mass. App. Ct. 759, 765 (2010) ("the zoning freeze provision . . . ties the duration of a process freeze and the triggering of an eight-year freeze to the subdivision approval process").

Similarly, G. L. c. 111, § 127P, inserted by St. 1981, c. 750, § 1, presumes an existing valid municipal process: *"Whenever a person has submitted a subdivision plan, or a preliminary subdivision plan* which is followed within seven months by a definitive plan, . . . the land shown on such plan shall be governed by provisions of the state environmental code, or of the provisions of local board of health regulations . . . in effect at the time of first submission of said plan . . . for a period of three years from the [time of approval]." (Emphasis supplied.) See *Kitras* v. *Zoning Administrator of Aquinnah, supra* at 247 n.6 (suggesting the usual equivalence of entitlement to zoning and health code freezes).

In short, statutory freeze rights cannot function in the absence of a valid and effective local subdivision control process. The absence of such a process in Gosnold precluded any freeze entitlements for Ridgeley.

*4. Gosnold's conduct; equitable considerations.* Ridgeley proposes that, after the town meeting authorization of 2000, the planning board intentionally deferred the adoption of rules and regulations as part of a "wait-and-see" strategy by which it could delay and resist a substantial and unwanted subdivision plan.[9] As an equitable remedy, Ridgeley requests orders requiring

---

[9]At oral argument, the defendants denied any improper motive and attributed the omission of subdivision rules and regulations to the thin resources and multiple burdens of the selectmen.

the planning board to entertain Ridgeley's definitive plan under the zoning and health code standards in force at the time of the submission of its preliminary plan. One cannot condone the performance of the defendants, particularly their neglect of subdivision rules and regulations as they stiffened the zoning and health code requirements upon the arrival of the Ridgeley plan. However, several barriers prevent the requested finding and relief.

First, the case proceeded to a disposition on the state of the pleadings. Ridgeley's complaint did not allege bad motive. A motion for judgment on the pleadings limits the judge and the reviewing court to the surface of the complaint and the answer. Fact finding about motive is not possible.[10]

Second, the planning board did not violate any objective standard of law governing its duties. In that circumstance, judicial review is extremely limited. "Where statutory language clearly authorizes actions taken by an agency, the actions are wholly lawful, and we need not look behind them to determine the agency's motives." *Massachusetts Fedn. of Teachers* v. *Board of Educ.*, 436 Mass. 763, 776-777 (2002), and cases cited.

Finally, we must respect the deeply rooted rule and policy prohibiting the estoppel of a governmental body's performance of its public health, safety, and welfare duties. Ridgeley proposes that we restrict the planning board to former and less stringent zoning and health code criteria because it may have acted unfairly toward Ridgeley's subdivision plan. Settled law forbids that remedy. The courts cannot estop the conduct of a governmental officer or agency, as they might a private actor, because the public interest in the lawful work of the governmental actor overrides the unfairness or injury to the private complainant. See, e.g., *Doris* v. *Police Commr. of Boston*, 374 Mass. 443, 449-450 (1978); *Harrington* v. *Fall River Hous. Authy.*, 27 Mass. App. Ct. 301, 308-311 (1989); *Dagastino* v. *Commissioner of Correction*, 52 Mass. App. Ct. 456, 458-459 (2001). The anti-estoppel doctrine applies to even those circumstances

---

[10]Also, consideration of Ridgeley's motion for summary judgment would not result in a determination of motive. Questions of motive and intent are seldom suitable for disposition by summary judgment. See *Flesner* v. *Technical Communications Corp.*, 410 Mass. 805, 809 (1991); *Maimaron* v. *Commonwealth*, 449 Mass. 167, 181 (2007).

in which the governmental agency or officer has acted in bad faith. See *Phipps Prod. Corp.* v. *Massachusetts Bay Transp. Authy.*, 387 Mass. 687, 693-694 (1982) (governmental agency employs its own deviation from public bidding laws as excuse to repudiate unwanted contract with plaintiff). "Although the [defendant's] conduct would hardly qualify it for a 'sportsmanship' award and although [the plaintiff with whom it contracted] may reasonably conclude that it was treated most unfairly, a decision in [the plaintiff's] favor would seriously threaten the integrity of the [public bidding] processes [required by law]." *Id.* at 694.

5. *Separate mandamus action.* The judge correctly extended his reasoning to Ridgeley's action to compel the town clerk to issue a certificate of constructive approval of its definitive plan. The absence of a valid municipal subdivision control law precluded any entitlement to an approved plan.

*Conclusion.* The judgment in case no. 09MISC-394288 is affirmed. The judgment in case no. 10MISC-430417 is affirmed.

*So ordered.*