ELIZABETH E. KRAFCHUK & another[1] vs. PLANNING BOARD OF
IPSWICH & others.[2]

Essex. December 1, 2008. - April 7, 2009.

Present: MARSHALL, C.J., IRELAND, SPINA, COWIN, CORDY, & BOTSFORD, JJ.

*Administrative Law,* Standing. *Subdivision Control,* Appeal, Approval of plan,
Decision of planning board.

Sufficient evidence supported a Superior Court judge's finding that abutters
had standing, pursuant to G. L. c. 41, § 81BB, to appeal a local planning
board's approval of a definitive subdivision plan. [522-525]
In an appeal in Superior Court from a local planning board's (board's) ap-
proval of an amended definitive subdivision plan of land, the judge erred
in concluding that the land was no longer entitled to the protection of the
freeze of the zoning bylaw provided by G. L. c. 40A, § 6, fifth par., at the
time the board approved the plan; therefore, the defendant landowners
were not required to comply with amendments to the zoning bylaw regard-
ing minimum lot size that were adopted after the landowners had submit-
ted their preliminary plan to the board. [525-529]
A local planning board (board), in approving an amended definitive subdivision
plan of land, did not abuse its broad discretion by waiving strict compliance
with certain of its subdivision rules and regulations pursuant to G. L. c. 41,
§ 81R [529-532]; however, the board did err in approving the plan without
granting an express waiver of the section of its rules and regulations regard-
ing the capacity of storm water basins, which required that the board, on
remand, consider whether to waive the requirement [532].
In an appeal in Superior Court from a local planning board's (board's) ap-
proval of an amended definitive subdivision plan of land, the judge cor-
rectly concluded that the board's approval was not valid because the
members of the board who voted to approve the plan had not been present
at all of the public hearings when the plan was considered. [532-534]

CIVIL ACTIONS commenced in the Superior Court Department
on February 7, July 11, and December 30, 2003, respectively.

After consolidation, the cases were heard by *Richard E.
Welch, III,* J.

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

[1]Joseph A. Brear, Jr., trustee of Buttonwood Nominee Trust.

[2]Town of Ipswich, Edward P. Fagan, and Anna M. Fagan.

*Douglas H. Wilkins* for Edward P. Fagan & another.

*James G. Gilbert,* for Elizabeth E. Krafchuk & another.

*Benjamin Fierro, III,* for Home Builders Association of Massachusetts, Inc., amicus curiae, submitted a brief.

IRELAND, J. In this case we consider issues concerning a definitive subdivision plan of land owned by the defendants, Edward P. Fagan and Anna M. Fagan (Fagans), that was approved by the planning board of Ipswich (board). The plaintiffs, Elizabeth E. Krafchuk and Joseph A. Brear, Jr., each own property abutting the Fagans' parcel of land, which is the subject of the plan. Because we conclude that the plaintiffs had standing to challenge the board's approval of the Fagans' definitive plan, pursuant to G. L. c. 41, § 81BB[3]; that the Fagans' land continued to be entitled to the protection of the process freeze of the zoning bylaw provided by G. L. c. 40A, § 6, fifth par.,[4] at the time when, following the board's rescission of constructive approval of the plan, they submitted an amended plan; that the board did not exceed its authority in granting waivers from its rules and regulations pursuant to G. L. c. 41, § 81R[5]; and that the board's

---

[3]General Laws c. 41, § 81BB, provides, in pertinent part:

"Any person, whether or not previously a party to the proceedings . . . aggrieved by . . . any decision of a planning board concerning a plan of a subdivision of land, or by the failure of such a board to take final action concerning such a plan within the required time, may appeal to the superior court . . . or to the land court . . . . The court shall hear all pertinent evidence and determine the facts, and upon the facts so determined, shall annul such decision if found to exceed the authority of [the] board, or make such other decree as justice and equity may require."

[4]General Laws c. 40A, § 6, fifth par., provides, in pertinent part:

"If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law . . . the land shown on such plan shall be governed by the applicable provisions of the zoning . . . bylaw . . . in effect at the time of the first such submission while such plan . . . [is] being processed under the subdivision control law, and, if such definitive plan or an amendment thereof is finally approved, for eight years from the date of the endorsement of such approval . . . ."

[5]General Laws c. 41, § 81R, provides, in pertinent part, that "[a] planning

approval vote was not valid where board members did not attend the hearings on the plan as required, we vacate the judgment of the Superior Court and remand this matter for further proceedings.

1. *Background.* The Fagans own a twenty-three and one-half acre parcel of land that has frontage along Heartbreak Road in Ipswich. In October, 2001, the Fagans, pursuant to G. L. c. 41, § 81S,[6] submitted to the board a preliminary subdivision plan that depicted seven proposed lots, including several lots of approximately one acre in size. The lots were shown on the plan as having frontage along Blue Spruce Drive, a proposed cul-de-sac that would provide access to Heartbreak Road via a T-shaped intersection. Later that month, Ipswich amended its zoning bylaw, increasing the minimum lot size for the district where the Fagans' land is located from one acre to two acres. In March, 2002, the board disapproved the Fagans' preliminary plan.

The Fagans submitted a definitive subdivision plan to the board in May, 2002, fewer than seven months after the submission of their preliminary plan. The board held a public hearing to consider the plan beginning in June, 2002, and continuing throughout the year. The Fagans submitted amended plans in November, 2002, and again in December, 2002. Several board members were not present at all of the sessions when the defendants' application was considered. At a session held in January, 2003, the board, with all members present, voted to disapprove the most recent amendment to the plan, and to grant, pursuant to G. L. c. 41, § 81R, waivers from strict compliance with several of its rules and regulations.

The plaintiffs timely filed an appeal in the Superior Court, pursuant to G. L. c. 41, § 81BB, seeking judicial review of the board's decision to grant waivers to the Fagans. The Fagans did not file their own appeal, but instead asserted to the board that

board may in any particular case, where such action is in the public interest and not inconsistent with the intent and purpose of the subdivision control law, waive strict compliance with its rules and regulations . . . ."

[6]General Laws c. 41, § 81S, provides, insofar as is relevant here: "In the case of a subdivision showing lots in a residential zone, any person, before submitting his definitive plan for approval, may submit to the planning board and to the board of health, a preliminary plan . . . ."

their application had already been constructively approved prior to the board's decision, pursuant to G. L. c. 41, § 81U,[7] due to the board's failure to take final action or to file with the town clerk either a certificate or notice of an agreed extension, within ninety days after the May, 2002, filing of the definitive plan. The board, which had undergone a change in membership following the January, 2003, hearing, held a hearing in March, 2003, to consider the Fagans' assertion of constructive approval. The hearing was continued to May, 2003, when the board voted to rescind the constructive approval pursuant to G. L. c. 41, § 81W,[8] and, without hearing any new substantive evidence, to readopt its January, 2003, decision disapproving the definitive plan and granting waivers.[9]

The plaintiffs again filed a G. L. c. 41, § 81BB, appeal in the Superior Court, seeking judicial review of the board's decision to readopt its January, 2003, decision granting waivers. The Fagans separately filed an appeal in the Land Court, pursuant to G. L. c. 41, § 81BB, seeking judicial review of the board's decision to rescind the constructive approval and to readopt the disapproval decision.

In August, 2003, the Fagans submitted a request to the board to revoke the disapproval and to approve their amended plan. The board, after another change in membership, held a public hearing on the Fagans' request beginning in September, 2003,

---

[7]General Laws c. 41, § 81U, provides, in relevant part:

"In the case of a subdivision showing lots in a residential zone, where a preliminary plan has been acted upon by the planning board . . . an applicant may file a definitive plan. The failure of a planning board either to take final action or to file with the city or town clerk a certificate of such action on the definitive plan within ninety days after such submission, or such further time as may be agreed upon at the written request of the applicant, shall be deemed to be an approval thereof."

[8]General Laws c. 41, § 81W, provides, in pertinent part, that "[a] planning board, on its own motion or on the petition of any person interested, shall have power to modify, amend or rescind its approval of a plan of a subdivision . . . ."

[9]Two of the board members who voted to rescind the constructive approval and to readopt the disapproval decision had neither participated in consideration of the Fagans' plan prior to January, 2003, nor voted on the January, 2003, decision.

and continuing throughout the year. The Fagans submitted an amended definitive subdivision plan in October, 2003. Not all of the board members were present at all of the sessions during which the Fagans' amended plan was considered.

The board voted on the amended plan at a hearing held in December, 2003. With four of the board's five members voting, the board unanimously rescinded the disapproval and approved the definitive subdivision plan as amended — adopting, in its decision, the twelve waivers that had been granted in the January, 2003, decision.[10] The plaintiffs filed a third appeal in the Superior Court, pursuant to G. L. c. 41, § 81BB, seeking judicial review of the approval.

A bench trial was held on the plaintiffs' three consolidated Superior Court actions. On the threshold jurisdictional issue of standing, the judge ruled that both plaintiffs were persons aggrieved pursuant to G. L. c. 41, § 81BB, and could challenge the board's decisions. Turning to the merits of the plaintiffs' appeals, the judge concluded that the board's act approving the plan was invalid for three reasons. First, the judge ruled that the Fagans' plan had been constructively approved, but that the board's May, 2003, decision rescinding the constructive approval had extinguished the zoning freeze provided by G. L. c. 40A, § 6, fifth par. On that basis, the judge concluded that the two-acre minimum lot size provision of the bylaw, as amended in October, 2001, applied to the Fagans' amended plan that they submitted in October, 2003. The judge ruled that the board's December, 2003, approval of the amended plan was therefore invalid because the one-acre lots depicted on the plan did not conform to the applicable provisions of the bylaw. The judge further concluded that the approval was invalid because the board's decision incorporated two waivers of compliance with the board's subdivision rules and regulations that the judge found to have been erroneously granted. The judge also ruled that the board's December, 2003, decision was not valid where the members of the board who voted to approve the plan had not been present at all of the public hearings when the plan was considered. See *Mullin* v. *Planning Bd. of Brewster*, 17 Mass. App. Ct. 139 (1983) (in case of adjudicatory

---

[10]Only two of the board members who voted on the approval decision had participated in the board's January, 2003, decision.

proceedings before planning board, members required to attend hearing to be entitled to vote). Having found that the board acted in excess of its authority, the judge directed entry of a judgment annulling the board's approval decision, remanding the matter to the board, and dismissing the remaining counts. The Fagans appealed.

The Appeals Court affirmed the judgment. *Krafchuk* v. *Planning Bd. of Ipswich*, 70 Mass. App. Ct. 484 (2007). We granted the Fagans' application for further appellate review.[11]

2. *Discussion.* a. *Standing.* Pursuant to G. L. c. 41, § 81BB, only persons who are aggrieved by a planning board's decision concerning a definitive subdivision plan may appeal to the Superior Court or the Land Court. A person aggrieved within the meaning of G. L. c. 41, § 81BB, must assert "a plausible claim of a definite violation of a private right, a private property interest, or a private legal interest." *Standerwick* v. *Zoning Bd. of Appeals of Andover*, 447 Mass. 20, 27 (2006), quoting *Harvard Sq. Defense Fund, Inc.* v. *Planning Bd. of Cambridge*, 27 Mass. App. Ct. 491, 493 (1989).[12] The asserted basis for the claim also must be one that the statute intends to protect. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, supra at 27-28. "The injury must be more than speculative . . . but the term 'person aggrieved' should not be read narrowly" (citations omitted). *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, 421 Mass. 719, 721 (1996).

Abutters entitled to notice of planning board hearings, pursuant to G. L. c. 41, § 81T, enjoy a rebuttable presumption that they are persons aggrieved. See *Standerwick* v. *Zoning Bd. of Appeals of Andover*, supra at 33. To rebut the presumption, a party challenging the standing of an abutter "must offer evidence

[11]We acknowledge the amicus brief filed by the Home Builders Association of Massachusetts, Inc.

[12]Because the Zoning Act, G. L. c. 40A, and the subdivision control law, G. L. c. 41, §§ 81K-81GG, share the similar purpose of regulating the use of land to ensure the safety, convenience, and welfare of the inhabitants of municipalities, *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 726 (2000), we are guided in our determination of the meaning of "person aggrieved" in the context of the subdivision control law by our case law involving zoning, i.e., appeals pursuant to G. L. c. 40A, § 17. See *Rattner* v. *Planning Bd. of W. Tisbury*, 45 Mass. App. Ct. 8, 10 (1998).

'warranting a finding contrary to the presumed fact.' " *Id.* at 34, quoting *Marinelli* v. *Board of Appeals of Stoughton*, 440 Mass. 255, 258 (2003). "Once the presumption is rebutted, the burden rests with the plaintiff to prove standing, which requires that the plaintiff 'establish — by direct facts and not by speculative personal opinion — that his injury is special and different from the concerns of the rest of the community.' " *Standerwick* v. *Zoning Bd. of Appeals of Andover*, supra at 33, quoting *Barvenik* v. *Aldermen of Newton*, 33 Mass. App. Ct. 129, 132 (1992). A party challenging a board's decision need not prove by a preponderance of the evidence that his or her claim of particularized injury is true. *Butler* v. *Waltham*, 63 Mass. App. Ct. 435, 441. (2005). "Rather, the plaintiff must put forth credible evidence to substantiate his allegations. In this context, standing becomes, then, essentially a question of fact for the trial judge." *Marashlian* v. *Zoning Bd. of Appeals of Newburyport*, supra at 721. The judge's finding as to whether a person is aggrieved will not be set aside unless clearly erroneous. *Id.* at 722. See Mass. R. Civ. P. 52 (a), as amended, 423 Mass. 1402 (1996).

The Fagans argue that both plaintiffs lacked standing to challenge the board's decision. We disagree. The judge concluded that Krafchuk had established her standing as a person aggrieved on the basis of two of her claims of harm. We focus here only on the judge's finding that the proposed subdivision would likely cause increased runoff into the wetlands that surround and comprise part of Krafchuk's property, and that the resulting increase in saturation of her land threatened harm to her septic system and water well.[13]

It is not disputed that the expert testimony of the Fagans' engineer rebutted Krafchuk's presumed standing. Nor is it disputed that, at the very least, Krafchuk's claim that her property

[13]The judge also concluded that the design of the proposed intersection of Blue Spruce Drive with Heartbreak Road was unsafe, and that Krafchuk would be subject to particular and individualized harm because, as an abutter, she would travel through the intersection more frequently than would the general public. Because Krafchuk was not required to meet her burden as to more than one claim of particularized injury in order to establish her standing, we need not consider whether her claim regarding the intersection provided a sufficient independent basis on which the judge could have found her to be aggrieved.

would likely be harmed by potential runoff and flooding due to the subdivision constituted the type of injury that the subdivision control law was intended to protect against. G. L. c. 41, § 81M (planning board shall exercise powers under subdivision control law with due regard for, among other things, securing adequate provision for water, sewerage, and drainage). The judge properly concluded that the potential harm to Krafchuk's property, posed by the likelihood of increased runoff and flooding, was special and different from any threatened injury to the community at large. See *Bell* v. *Zoning Bd. of Appeals of Gloucester*, 429 Mass. 551, 554 (1999); *Barvenik* v. *Aldermen of Newton, supra.*

The judge's finding that Krafchuk met her burden by putting forth credible evidence to substantiate her claim was not clearly erroneous. Although the plaintiffs presented expert testimony, the testimony did not directly address the manner in which Krafchuk's own property would be affected by flooding as a result of the proposed subdivision. Instead, the expert's testimony concerning certain aspects of the drainage system shown on the plan, including the infiltration basins discussed *infra*, tended to show that storm water would likely flood the proposed intersection of Blue Spruce Drive and Heartbreak Road and run into the wetlands surrounding Krafchuk's property in the case of a ten year or more intense storm event. The extent to which the judge relied on this expert testimony for the flooding issue is not entirely clear, and the judge apparently concluded that expert testimony was not required in the circumstances here. What is clear, however, is that the judge relied on the testimony given by lay witnesses, i.e., Krafchuk and several of her neighbors, as well as photographic evidence showing flooding due to storm water at the location of the proposed intersection. Based on this evidence, the judge found that Heartbreak Road lacks a storm sewer, that Heartbreak Road residents rely on septic systems and wells, and that the area includes extensive wetlands. The judge did not abuse his discretion in determining that expert testimony was not required in these circumstances. On this record, it was reasonable for the judge to rely on lay witness testimony to conclude that increased runoff and flooding from the site of the proposed subdivision would likely harm Krafchuk's septic system and well. Thus

we agree with the judge's conclusion that the evidence Krafchuk put forth was more than unfounded speculation.[14]

b. *Zoning freeze.* The Fagans contend that the judge erred in concluding that their land was no longer entitled to the protection of the zoning freeze provided by G. L. c. 40A, § 6, fifth par., at the time the board approved their amended definitive plan in December, 2003. We conclude that their land continued to be protected by the process freeze provision of § 6 at the time of the board's decision in December, 2003, and remains so today.

We begin with a discussion of the applicable statutory provisions. General Laws c. 40A, § 6, fifth par., a provision of the Zoning Act, protects landowners from having to comply with amendments to the zoning bylaw or ordinance that are adopted after the landowner has submitted a subdivision plan to a planning board, "by (1) freezing the applicable bylaws governing the land shown on the subdivision plan as of the time when the plan *is first submitted to the planning board and while the plan is be-ing processed under the subdivision control law* (the process freeze); and (2) freezing those same zoning bylaws for eight years from the date of the endorsement of final approval of a definitive plan [the eight-year freeze]." *Kitras v. Zoning Adm'r of Aquinnah, ante* 245, 252 (2009).

Under the provisions of the subdivision control law, G. L. c. 41, § 81U, provides that a definitive plan is deemed approved where the planning board fails "either to take final action or to file with the . . . town clerk a certificate of such action on the definitive plan within ninety days after such submission, or such further time as may be agreed upon at the written request of the applicant." See *Stoner v. Planning Bd. of Agawam,* 358 Mass. 709, 713-714 (1971). If a plan has been constructively approved pursuant to G. L. c. 41, § 81U, the constructive approval becomes final, pursuant to G. L. c. 41, § 81V, after the expiration of twenty days without notice of appeal, or if an appeal has

---

[14]The Fagans also argue that the judge erred in ruling that they failed to rebut Brear's presumed standing. Given our conclusion that Krafchuk had standing, we need not consider this argument. It is only necessary to determine that one plaintiff has standing to challenge the board's action. See *Jepson v. Zoning Bd. of Appeals of Ipswich,* 450 Mass. 81, 92-93 (2007).

been taken, when the town clerk receives a certified record of the court indicating that the constructive approval has become final.[15] *Kitras* v. *Zoning Adm'r of Aquinnah, supra* at 253. See G. L. c. 41, § 81V. Once the constructive approval has become final, G. L. c. 41, § 81V, requires the town clerk to "issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final." See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 169 (1969). The town clerk's act of issuing the certificate memorializes that the constructive approval has become final, but does not, itself, confer finality. *Kitras* v. *Zoning Adm'r of Aquinnah, supra* at 254-255. The certificate issued by the town clerk in the case of a constructive approval is the functional equivalent of a written endorsement of the planning board's approval on a plan, and therefore triggers the eight-year zoning freeze under G. L. c. 40A, § 6. *Id.* at 254. It is important to note, however, that G. L. c. 41, § 81W, empowers a planning board to modify, amend, or rescind its approval of a plan. *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow, supra* at 169-170 (planning board empowered under § 81W to modify, amend, or rescind constructive approval where board "blunder[ed] its way into a position where plan became constructively approved").

Here, the Fagans' land became entitled to the protection of the process freeze provided by G. L. c. 40A, § 6, when they filed their preliminary plan in October, 2001. Their land continued to be entitled to the protection of the process freeze when they submitted their definitive plan in May, 2002, within seven months following the submission of their preliminary plan. We agree with the judge that the board's failure to take final action, or to file a certificate of its action or notice of an agreed-on extension of time with the town clerk within ninety days after the

[15]General Laws c. 81, § 81V, provides, in pertinent part:

"In case of the approval of a plan by reason of the failure of the planning board to act within the time prescribed, the . . . town clerk shall, after the expiration of twenty days without notice of appeal . . . issue a certificate stating the date of the submission of the plan for approval, the fact that the planning board failed to take final action and that the approval resulting from such failure has become final."

filing of the definitive plan, resulted in constructive approval of the plan, pursuant to G. L. c. 41, § 81U, fifth par. The constructive approval became final when the twenty-day appeal period expired. See *Kitras* v. *Zoning Adm'r of Aquinnah, supra* at 252-253. See G. L. c. 41, § 81V. The eight-year zoning freeze pursuant to G. L. c. 40A, § 6, fifth par., did not commence, however, because the town clerk did not issue a certificate memorializing final approval of the definitive plan. See *Kitras* v. *Zoning Adm'r of Aquinnah, supra.*

We disagree with the judge's conclusion that the Fagans' entitlement to the protection of the process freeze ended when the planning board acted, pursuant to G. L. c. 41, § 81W, to rescind the constructive approval,[16] and that the two-acre minimum lot size provision of the bylaw, as amended in October, 2001, applied to the amended plan the Fagans submitted in October, 2003, because it was filed more than seven months after the preliminary plan. The board's actions, i.e., rescinding the constructive approval and readopting the decision disapproving the plan, reinstated the process and, necessarily, the process freeze as well.

General Laws c. 41, § 81U, second par., provides that "[i]n the event of disapproval, the planning board shall state in detail wherein the plan does not conform to the rules and regulations of the planning board . . . and shall revoke its disapproval and approve a plan which, as amended conforms to such rules and regulations . . . ." By its plain language, this provision contemplates situations where, if the board disapproves a definitive plan, the process nevertheless continues where the applicant submits, within a reasonable time, an amended plan that addresses the reasons for the disapproval, and ultimately obtains approval by the board. This provision is consistent with G. L. c. 40A, § 6, fifth par., which provides that the process freeze ends and the eight-year freeze applies "if such [a] definitive plan *or an amendment thereof is finally approved*" (emphasis added). "[W]here two or more statutes relate to the same subject matter, they should be construed together so as to constitute a harmonious whole consistent with the legislative purpose." *FMR Corp.*

---

[16] The Fagans' appeal from that decision remains pending in the Land Court and is not before us.

v. *Commissioner of Revenue*, 441 Mass. 810, 819 (2004), quoting *Board of Educ.* v. *Assessor of Worcester*, 368 Mass. 511, 513-514 (1975). Preservation of the process freeze following disapproval of a timely submitted definitive plan is not automatic, however. General Laws c. 40A, § 6, seventh par., adds the requirement that, in order to preserve the process freeze, an appeal must be taken from the disapproval decision.[17] Therefore, where the deliberative process between a planning board and an applicant regarding a timely filed definitive plan results in a disapproval decision, but progresses in a continuous fashion, wherein the applicant (1) timely files an appeal from the board's decision; and (2) submits within a reasonable time an amended plan that addresses the reasons for disapproval; the process freeze provision of G. L. c. 40A, § 6, fifth par., continues to apply to the land that is the subject of the plan.[18]

Here, although the board acted, pursuant to G. L. c. 41, § 81W, to rescind the constructive approval, it contemporaneously acted to readopt its January, 2003, disapproval decision.

---

[17]General Laws c. 40A, § 6, seventh par., provides:

> "Disapproval of a plan shall not serve to terminate any rights which shall have accrued under the provisions of this section, *provided an appeal from the decision disapproving said plan is made under applicable provisions of law*. Such appeal shall stay, pending . . . the entry of an order . . . of a court of final jurisdiction, the applicability to land shown on said plan of the provisions of any zoning . . . bylaw which became effective after the date of submission of the plan first submitted, together with time required to comply with any such agreement or with the terms of any order . . . of the court." (Emphasis added).

[18]We do not agree with the decision of the Appeals Court in *Arenstam* v. *Planning Bd. of Tyngsborough*, 29 Mass. App. Ct. 314, 317 (1990), which misread our decision in *Green* v. *Board of Appeal of Norwood*, 358 Mass. 253, 257 n.4 (1970). Our decision in the *Green* case does not stand for the proposition that any definitive plan filed more than seven months after a preliminary plan is required by G. L. c. 40A, § 6, to be treated as a new plan. The court noted that "[n]o substantial reason appears for any legislative intention that the proviso should preclude protection under [G. L. c. 40A,] § 7A [the predecessor to the current § 6] from zoning amendments effective only after approval of a definitive plan." *Green* v. *Board of Appeal of Norwood*, *supra*. We have never adopted or cited with approval the holding of the Appeals Court in its decision in the *Arenstam* case. See *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640-641 n.5 (2000), and cases cited (noting with disapproval interpretation of case law by Appeals Court as to applicability of zoning freeze to plan itself, rather than to land shown on plan).

The Fagans filed an appeal from that decision.[19] The process freeze continued for a reasonable period of time to allow the Fagans to submit an amended plan that addressed the reasons for disapproval. See G. L. c. 41, § 81U, second par. When the Fagans submitted their amended plan in October, 2003, the land shown on the plan continued to be entitled to the process freeze. Accordingly, their land remains governed by the applicable provisions of the bylaw that were in effect at the time they submitted their preliminary plan in October, 2001.

c. *Waivers.* Pursuant to G. L. c. 41, § 81R, a planning board enjoys broad discretion to waive strict compliance with its rules and regulations where the waiver is in the public interest and is not inconsistent with the intent and purpose of the subdivision control law. See *Miles* v. *Planning Bd. of Millbury,* 404 Mass. 489, 491 (1989); *Lyman* v. *Planning Bd. of Winchester,* 352 Mass. 209, 213-214 (1967); *Musto* v. *Planning Bd. of Medfield,* 54 Mass. App. Ct. 831, 837 (2002). The board is not required to set forth findings on which it bases its determination. See *Wheatley* v. *Planning Bd. of Hingham,* 7 Mass. App. Ct. 435, 439 n.8 (1979). "A planning board's decision to grant or deny a waiver will be upheld unless premised upon 'a legally untenable ground, or is unreasonable, whimsical, capricious or arbitrary.' " *Musto* v. *Planning Bd. of Medfield, supra* at 837, quoting *Davis* v. *Zoning Bd. of Chatham,* 52 Mass. App. Ct. 349, 355 (2001). The board's determination whether a particular waiver is in "the public interest" involves a large measure of discretion, and if "reasonable minds might in good faith differ, without doubting the reasonableness of the opposing view, the conclusion reached by the planning board should be sustained on judicial review. For it is the board, not the court, to whom the statute delegates the discretion, and the role of the court is merely to ascertain whether the board exceeded its authority." *Arrigo* v. *Planning Bd. of Franklin,* 12 Mass. App. Ct. 802, 809 (1981). In reviewing a waiver granted by a board, the court determines whether there is substantial derogation from the intent and purpose of the subdivision control law. *Id.*

The Fagans argue that the judge erred in concluding that the

[19]The board's January, 2003, disapproval decision was itself the subject of an appeal by the plaintiffs.

board abused its discretion by waiving strict compliance with its subdivision rules and regulations, pursuant to G. L. c. 41, § 81R, as to (1) the 325-foot minimum line of sight distance required for the intersection of the proposed Blue Spruce Drive with Heartbreak Road; and (2) the required minimum two-foot soil depth between the bottom of an infiltration basin and the level of the seasonal high water table. They also argue that the judge erred in concluding that their plan was not entitled to approval where the board did not expressly waive the required minimum handling capacity for storm water of a one hundred year storm event. We consider each, in turn.

The judge found that the line of sight distance that would exist at the intersection looking north to Heartbreak Road would be 222 feet, rather than the 252-foot distance that the board found and considered to be "minimally adequate." Relying on the guidelines established by the American Association of State Highway and Transportation Officials (AASHTO), the judge found that a 222-foot sight distance was adequate for vehicles traveling thirty-two miles per hour. The judge also found that, despite the posted speed limit on Heartbreak Road of twenty-five miles per hour, most vehicles traveling on the road exceeded thirty-two miles per hour. On that basis, the judge concluded that the board acted arbitrarily by accepting the 252-foot distance.

On the record before us, we cannot say that the board abused its discretion in determining that the waiver was in the public interest and consistent with the intent and purpose of the subdivision control law. The board's decision required posting of "appropriate signage" as a condition for waiving the required minimum sight distance. It stated that the 252-foot sight distance it found would exist at the intersection was sufficient for a speed in excess of the posted speed limit of twenty-five miles per hour. Given the judge's findings that there would be a 222-foot sight distance at the intersection, a distance some thirty feet less than that found by the board, and that the 222-foot distance would nevertheless be adequate for a speed of thirty-two miles per hour according to the AASHTO guidelines relied on by the judge, the record establishes that there was a reasonable basis to conclude that the waiver was in the public interest. When the judge determined that the board's "proposed mitigation measure of

erecting two intersection signs and one additional speed limit sign [was] highly unlikely to bring drivers' speeds down to the thirty-two miles per hour level," he improperly substituted his own judgment for that of the board. See *Davis* v. *Zoning Bd. of Chatham*, 52 Mass. App. Ct. 349, 355-357 & n.11 (2001) (judicial review of board's decision based on de novo fact finding, but deference owed to decisions reflecting intimate knowledge, experience, and judgment of local officials); *Arrigo* v. *Planning Bd. of Franklin*, *supra*. The board conditioned the waiver on the installation of traffic signs, indicating that the board arrived at an engineering solution with the Fagans that would, given the speed limit of twenty-five miles per hour, provide substantially the same level of safety and convenience to the public as would strict adherence to the board's own rules and regulations. Accordingly, it was in the public interest to allow the Fagans to develop their land. Nor can we say that, in light of the board's conditions of the waiver, the difference of approximately one hundred feet between the 325-foot distance required by the board's regulations and the 222-foot line of sight found to exist by the judge amounted to a substantial derogation from the intent and purpose of the subdivision control law. Contrast *Wheatley* v. *Planning Bd. of Hingham*, 7 Mass. App. Ct. 435, 443-444 (1979) (waiver granted by planning board inconsistent with intent and purpose of subdivision control law where board did not require the installation of basic utilities in subdivision).

The judge also concluded that the board's waiver of its requirement that two feet of soil separate the bottom of infiltration basins from the seasonal high water table was contrary to the public interest and to public safety. He found that one of the proposed infiltration basins would be separated from the seasonal high water table by only nine and one-half inches of soil, and that another basin would have only twelve inches of separation. Although the board required, as a condition for its waiver, that pretreatment devices be installed inside the two basins, the judge found that the waiver was arbitrary because the pretreatment devices neither served the same functions as soil nor performed as effectively as soil. We cannot say that the board abused its discretion in determining that the waiver was in the public interest. The board stated that the purpose of the requirement was to protect the aquifer. It concluded that the pretreatment devices

provided adequate mitigation, justifying waiving the two-foot soil depth requirement. Here, again, we conclude that requiring the installation of pretreatment filters inside the two infiltration basins in lieu of the amount of soil required by the subdivision rules and regulations, as a condition for the waiver, based on the board's finding that the Fagans' engineering solution would provide substantially the same level of safety and convenience to the public as would strict adherence to the board's own rules and regulations, was not an abuse of the board's discretion. Nor can we say that the installation of a pretreatment device, where the soil depth beneath one of the infiltration basins was less than half the required amount, constituted a substantial derogation from the intent and purpose of the statute.

We agree with the judge, however, that the board erred in approving the plan without granting an express waiver of § 6.14.2 of its rules and regulations, requiring that storm water basins handle a minimum capacity of a one hundred year storm event. Pursuant to G. L. c. 41, § 81R, the planning board is required to indorse any conditions either on the plan itself or as they appear in a separate instrument incorporated by reference on the plan. In directing entry of an order of remand to the board, the judge shall require that the board consider whether to waive the requirement.

d. *Composition of the board.* The Fagans argue that the judge erred in ruling that the board's December, 2003, approval was not valid because the members of the board who voted to approve the plan had not been present at all of the public hearings when the plan was considered. See *Mullin* v. *Planning Bd. of Brewster*, 17 Mass. App. Ct. 139 (1983). We agree with the judge's conclusion.

A public hearing held by a planning board to consider a definitive subdivision plan is quasi judicial in nature. *McElderry* v. *Planning Bd. of Nantucket*, 431 Mass. 722, 726 (2000). Action by a planning board to approve a definitive subdivision plan requires the affirmative vote of a majority of the members of the board. *Id.* at 727. All members of the board who are to join in the decision must have attended the hearing.[20] See *Mullin* v. *Planning Bd. of Brewster, supra* at 141.

---

[20]We note that in 2006 the Legislature amended the open meeting

Here, the judge found that, prior to the January, 2003, decision disapproving the plan and granting waivers, several board members missed meetings. The judge also found that much of the substantive information that the board relied on in its January, 2003, decision disapproving the plan and granting waivers was not considered by the board again prior to the May, 2003, decision, when the board readopted the waivers granted by the January, 2003, decision. The judge further found that board members missed meetings before the December, 2003, approval, and that the approval incorporated the same waivers granted by the January, 2003, decision.

In considering the judge's application of the so-called *Mullin* rule to these facts, we take into account the recent legislative enactment amending the open meeting law. See note 20, *supra.* Although it became effective after the proceedings in this case occurred and thus does not control here, G. L. c. 39, § 23D, now provides that, where a municipality has accepted the statutory section, a planning board member who misses a single session of a hearing where testimony or evidence is presented may nonetheless vote on the matter so long as the member certifies in writing that he or she has examined all the evidence presented at the missed session, including a recording or a transcript of the session.[21] Here, the record is clear that several board members who voted on the December, 2003, approval decision missed sessions at which the amended plan was considered. There is no dispute that some of the members were not even on the board prior to the January, 2003, decision when all of the evidence relating to the

law. General Laws c. 39, § 23D, inserted by St. 2006, c. 79, provides, in pertinent part:

> "Notwithstanding any general or special law to the contrary, upon municipal acceptance of this section for 1 or more types of adjudicatory hearings, a member of any municipal board . . . when holding an adjudicatory hearing shall not be disqualified from voting in the matter solely due to that member's absence from no more than a single session of the hearing at which testimony or other evidence is received.. Before any such vote, the member shall certify in writing that he has examined all evidence received at the missed session, which evidence shall include an audio or video recording of the missed session or a transcript thereof . . . ."

[21]The record does not indicate whether the town has accepted the provisions of the section subsequent to the enactment of G. L. c. 39, § 23D.

waivers was presented. Furthermore, the judge found that a planning board member "who [was] not at the hearing would not [have] gain[ed] a great deal of knowledge regarding the substance of the hearing by reviewing the minutes," which were, as the judge found, "necessarily sketchy as to the substance of information presented." The judge concluded that the composition of the board "seriously undermined the validity of an adjudicatory hearing on this subdivision." We agree.[22]

3. *Conclusion.* This matter is to be remanded for further proceedings consistent with our decision.

*So ordered.*

---

[22]Given our disposition of this case, we need not consider the Fagans' remaining arguments.