RICHARD BERNSTEIN & another[1] *vs.* PLANNING BOARD OF
STOCKBRIDGE (and three companion cases[2]).

Nos. 06-P-589, 07-P-982, 07-P-1595, & 07-P-1596.

Suffolk. October 14, 2009. - May 21, 2010.

Present: KANTROWITZ, SMITH, & GRAHAM, JJ.

*Subdivision Control,* Appeal, Approval of plan, Decision of planning board. *Zoning,* By-law, Special permit. *Practice, Civil,* Summary judgment.

This court concluded that the 2002 version of a portion of a town's zoning by-law applied to a parcel of land owned by the plaintiff developer, where the parcel was entitled, under G. L. c. 40A, § 6, fifth par., to a continuous freeze of the town's zoning provisions from the date of the plaintiff's submission of its preliminary subdivision plan of land in 2002. [765-768]

A Land Court judge did not err in invalidating a provision of a town's zoning by-law that conditioned any significant or valuable use of land falling within the town's lake and pond overlay district on the grant of a discretionary special permit. [768-771]

This court concluded that a local planning board's rescission, on two separate occasions, of constructive approval of the plaintiff developer's definitive subdivision plan was invalid, where they occurred before the town clerk issued a certificate of constructive approval. [771]

CIVIL ACTIONS commenced in the Land Court Department, one on November 18, 2003, two on March 8, 2005, and one on June 25, 2006.

The cases were heard by *Charles W. Trombly, Jr.,* J. on motions for summary judgment.

*Christopher H. Heep* for planning board of Stockbridge.

*Arthur P. Kreiger* for Stone Ridge Associates, LLC.

SMITH, J. These land use cases present a complex knot of interrelated litigation and appeals tied to the constructive approval of a definitive subdivision plan in Stockbridge (town). The four

---

[1] Stone Ridge Associates, LLC.

[2] The three companion cases involve substantially the same parties.

appeals, which we address together in this opinion, are appeals by the defendant planning board of Stockbridge (board). The board challenges (1) the entry of summary judgment in the Land Court in favor of the plaintiff developer Stone Ridge Associates, LLC (Stone Ridge[3]), on Stone Ridge's application for a special permit to build within an overlay zoning district; (2) an amended summary judgment addressing whether the land in question is subject to a zoning freeze; and (3) two decisions of the Land Court annulling the board's rescission, on two separate occasions, of constructive approval of Stone Ridge's definitive subdivision plan.[4]

1. *Background.* Stone Ridge is the owner of a 99.6-acre parcel of land upon which it seeks to build a subdivision. The parcel is situated within a residential zoning district in the town. In the spring and the summer of 2002, Stone Ridge began the subdivision permitting process by filing two sets of preliminary subdivision plans with the board. Thereafter, in October, 2002, it filed a nine-lot definitive subdivision plan with the board. The board took no action on the definitive plan until March 24, 2003, when it filed a disapproval decision with the town clerk.

Because the board's decision did not fall within the ninety-day deadline required by G. L. c. 41, § 81U,[5] Stone Ridge filed a complaint in the Land Court on April 1, 2003, seeking a declaration that the plan had been constructively approved as a result of the board's inaction, and also an order that the town

---

[3]Richard Bernstein, a principal of Stone Ridge, was a plaintiff in some aspects of these cases. Our reference to "Stone Ridge" includes Bernstein where applicable.

[4]For the sake of clarity, we have organized our discussion without regard to the chronological order of the filing of each appeal.

[5]General Laws c. 41, § 81U, fifth par., as appearing in St. 1986, c. 699, § 2, provides in relevant part:

> "In the case of a subdivision showing lots in a residential zone, where a preliminary plan has been acted upon by the planning board or where at least forty-five days has elapsed since submission of the preliminary plan, an applicant may file a definitive plan. The failure of a planning board either to take final action or to file with the city or town clerk a certificate of such action on the definitive plan within ninety days after such submission, or such further time as may be agreed upon at the written request of the applicant, shall be deemed to be an approval thereof."

clerk issue a certificate of constructive approval. More than three years later, in a decision dated May 2, 2006, a Land Court judge[6] ordered the town clerk to issue a certificate of constructive approval, which, in fact, was issued on June 30, 2006. The board did not appeal from the judge's order.

Against the backdrop of active litigation regarding the constructive approval of Stone Ridge's definitive subdivision plan, the board and Stone Ridge forged ahead with the approval process. Several of those actions gave rise to appeals currently before us. We address the background of each appeal in turn.

a. *Rescissions (Appeals Court docket nos. 07-P-1595 and 07-P-1596).* On or about March 4, 2003, shortly after the ninety-day constructive approval deadline had passed, Stone Ridge entered into a loan agreement with JDI Loans, III, LLC (JDI), securing the loan agreement with a mortgage on the parcel. Thereafter, in a decision dated October 31, 2003, the board rescinded its apparent constructive approval of Stone Ridge's definitive subdivision plan. The board based the rescission on two grounds: first, that the plan did not meet the requirements of the town's subdivision regulations, and, second, that the application was deficient. The board also found that the mortgage transaction was not entered into in good faith because the mortgage was executed prior to issuance of a certificate of constructive approval. Stone Ridge appealed the board's decision to the Land Court, arguing that the rescission was in violation of G. L. c. 41, § 81W, which requires the consent of third-party mortgagees prior to the rescission of an approved subdivision plan.

A few years later, after Stone Ridge had paid off its mortgage with JDI, the board, on April 24, 2006, again rescinded the apparent constructive approval of the definitive subdivision plan, on the same grounds enumerated in its 2003 rescission. Once again, Stone Ridge appealed the board's rescission to the Land Court. Stone Ridge thereafter filed a combined motion for summary judgment as to both rescissions. Following a hearing, on August 13, 2007, the judge issued a decision and judgment allowing Stone Ridge's combined motion for summary judg-

---

[6]The same Land Court judge heard and ruled on all relevant aspects of these cases.

ment and annulling each rescission. The board timely appealed from both rescissions.[7]

b. *Special permit application to build within overlay district (Appeals Court docket no. 06-P-589).* Single family homes are permitted as of right in the town's residential zoning district; however, the town's by-law requires a special permit for construction on land that falls within the town's "Lake and Pond Overlay District" (LPOD). Section 6.5 of the by-law regulates activity within the LPOD "to protect and enhance the principal lakefronts of the Town of Stockbridge; to maintain safe, healthful conditions; to prevent and control water pollution; and, to preserve vegetative cover and natural beauty." The parties do not dispute that some of the parcel falls within the LPOD.

In September, 2004, Stone Ridge applied for a special permit pursuant to the LPOD portion of the by-law (LPOD by-law). The board denied the special permit application in a decision dated February 15, 2005, concluding that Stone Ridge failed to demonstrate that the proposed construction would satisfy the environmental standards required by the LPOD by-law.

Stone Ridge timely appealed from the denial of its special permit application in the Land Court pursuant to G. L. c. 40A, § 17. In addition to arguing that the proposal satisfied the special permit criteria, Stone Ridge also sought a ruling that the LPOD by-law violated *SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101 (1984), because no substantial uses as of right were allowed within the LPOD. After the board filed its answer denying Stone Ridge's allegations, Stone Ridge moved for summary judgment. In a decision and judgment, the judge, on February 24, 2006, granted Stone Ridge's motion and invalidated the 2004 version of the LPOD by-law. The judge held that it violated the principles of *SCIT, Inc.*, because it allowed no substantial uses as of right within the LPOD, requiring nearly every proposed use to seek the board's permission via a special permit.[8] Essentially, the judge found that under the 2004 version of the LPOD by-law, the board was free to deny permission to any development in the

---

[7]The board's appeal regarding the October 31, 2003, rescission is docketed as Appeals Court no. 07-P-1596; the board's appeal regarding the April 24, 2006, rescission is docketed as Appeals Court no. 07-P-1595.

[8]The judge did not reach the issue whether the board acted arbitrarily and capriciously in denying the application.

LPOD. The judge nevertheless stayed the judgment for six months to allow the town to craft an LPOD by-law that might pass muster.

The board appealed from the allowance of summary judgment and the case was docketed in this court in April, 2006. In 2006, the town amended the 2004 version of the LPOD by-law, and the board, immediately thereafter, made an emergency motion to vacate the stayed judgment and requested that the Land Court judge find lawful the 2006 version of the LPOD by-law. The judge did not act on the motion at that time.[9]

c. *Stone Ridge's motion to amend judgment.* In November, 2006, Stone Ridge filed a motion in the Land Court to amend the judgment, asking the judge to find the 2002 version of the LPOD by-law controlling because the parcel was subject to a continuous zoning freeze as of the date the subdivision plan was first submitted in 2002, pursuant to G. L. c. 40A, § 6.[10,11] As a result of the zoning freeze, Stone Ridge maintained that the parcel was exempt from both the already invalidated 2004 version of the LPOD by-law, as well as the 2006 version of the LPOD by-law. Stone Ridge further requested that the judge invalidate the 2002 version of the LPOD by-law under *SCIT, Inc.,* because the 2002 and 2004 versions were substantively identical.

In response to Stone Ridge's motion, the board did not dispute that the judgment erroneously was based on the 2004 version of the LPOD by-law, and that the 2002 version of the LPOD by-law should have controlled. Nevertheless, the board argued that Stone Ridge's entitlement to a zoning freeze lapsed when the

---

[9]The judge subsequently addressed the motion to vacate in a combined "Order Allowing Plaintiff's Motion to Amend and Denying Defendants' Motion to Vacate Judgment," discussed *infra.*

[10]General Laws c. 40A, § 6, fifth par., as amended by St. 1982, c. 185, provides in relevant part: "If a definitive plan, or a preliminary plan followed within seven months by a definitive plan, is submitted to a planning board for approval under the subdivision control law, . . . the land shown on such plan shall be governed by the applicable provisions of the zoning ordinance or by-law . . . *in effect at the time of the first such submission* while such plan [is] being processed under the subdivision control law, *and,* if such definitive plan or an amendment thereof is finally approved, *for eight years from the date of the endorsement of such approval*" (emphasis supplied).

[11]It seems that, until the November, 2006, filing, all parties were under the mistaken impression that the 2004 version of the LPOD by-law governed.

board rescinded its apparent constructive approval of the subdivision plan before the town clerk issued a certificate of constructive approval. Alternatively, the board contended that the proper remedy for the judgment considered under the 2004 version of the LPOD by-law was to remand the case to the board for review of the special permit application under the 2002 version of the LPOD by-law.

In a decision[12] and amended judgment entered on May 7, 2007, the judge held that Stone Ridge's parcel was subject to an eight-year zoning freeze as of January 9, 2003, the date the judge found that the town constructively approved the subdivision plan, thereby exempting the parcel from the 2004 and 2006 versions of the LPOD by-law. The judge further determined that remanding the case to the board for reconsideration of the special permit application under the 2002 version of the LPOD by-law would be futile because the 2002 version was "virtually identical in language and substance" to the 2004 version of the LPOD by-law, which the judge already had invalidated. The resulting amended judgment required the board to grant Stone Ridge's special permit, but allowed the board to impose reasonable conditions to protect the watercourses contained in the LPOD. Following entry of the amended judgment, the board filed another appeal in this court (Appeals Court docket no. 07-P-982), reiterating on appeal the arguments it advanced in the Land Court.

After the parties filed their briefs, we stayed action on all four appeals until the Supreme Judicial Court decided two cases that concerned, at least in part, the application of a zoning freeze to land that owners sought to subdivide under the subdivision control law. See *Kitras* v. *Zoning Adminstrator of Aquinnah*, 453 Mass. 245 (2009) (*Kitras*); *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. 517 (2009). Following the publication of *Kitras* and *Krafchuk*, the parties here submitted to us supplemental briefs on the potential application of those decisions to the cases at hand. Further facts will be set forth as necessary.

2. *Standard of review.* Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, all material facts have been established and

---

[12]The decision was entitled, "Order Allowing Plaintiff's Motion to Amend and Denying Defendants' Motion to Vacate Judgment."

"the moving party is entitled to a judgment as a matter of law." *Yakubowicz* v. *Paramount Pictures Corp.*, 404 Mass. 624, 626 (1989), citing Mass.R.Civ.P. 56, 365 Mass. 824 (1974). On review of summary judgment, an appellate court considers "the record and the legal principles involved without deference to the motion judge's reasoning." *Clean Harbors, Inc.* v. *John Hancock Life Ins. Co.*, 64 Mass. App. Ct. 347, 357 n.9 (2005).

3. *Zoning freeze.* We begin our analysis by determining whether Stone Ridge's parcel benefits from a statutory zoning freeze, and the pendency of such a freeze if it exists. That threshold determination controls which version of the LPOD by-law must be applied to the parcel.

General Laws c. 40A, § 6, fifth par. (see note 10, *supra*), of the Zoning Act "relieves a developer who has submitted a subdivision plan to a local planning board from compliance with future changes to zoning bylaws by (1) freezing the applicable bylaws governing the land shown on the subdivision plan as of the time when the plan is first submitted to the planning board and while the plan is being processed under the subdivision control law (the process freeze); and (2) freezing those same zoning bylaws for eight years from the date of the endorsement of final approval of a definitive plan." *Kitras, supra* at 252. The statutory zoning freeze provision is intended "to protect landowners and developers from the practice in some communities of adopting onerous amendments to the zoning by-law after submission of a preliminary plan which is opposed by segments within the community." *Ibid.* (internal quotation marks omitted), citing *Heritage Park Dev. Corp.* v. *Southbridge*, 424 Mass. 71, 76 (1997); *Massachusetts Broken Stone Co.* v. *Weston*, 430 Mass. 637, 640-641 (2000).

As noted, *supra*, the zoning freeze provision of G. L. c. 40A, § 6, ties the duration of a process freeze and the triggering of an eight-year freeze to the subdivision approval process. In general, the subdivision control law, G. L. c. 41, §§ 81K-81GG, provides for a swift and orderly approval process. Specifically, a subdivision plan is deemed approved if a planning board fails "either to take final action or to file with the city or town clerk a certificate of such action on the definitive plan within ninety days after [its] submission." G. L. c. 41, § 81U, fifth par., as

appearing in St. 1986, c. 699, § 2. In other words, if a planning board fails to meet the timing requirements of G. L. c. 41, § 81U, a constructive approval of the definitive subdivision plan results. See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow*, 355 Mass. 165, 168 (1969); *Stoner* v. *Planning Bd. of Agawam*, 358 Mass. 709, 713-714 (1971).

Once a subdivision plan has become constructively approved under § 81U, the approval becomes final either by: (1) "the expiration of twenty days without notice of appeal"; or (2) if there has been an appeal, a court decision upholding the constructive approval. G. L. c. 41, § 81V, as amended by St. 2002, c. 393, § 4. "Either way, the town clerk then shall 'issue a certificate stating . . . that the approval . . . has become final.' " *Kitras, supra* at 253, quoting from G. L. c. 41, § 81V. See *Kay-Vee Realty Co.* v. *Town Clerk of Ludlow, supra* at 169. Returning to the language of G. L. c. 40A, § 6, the zoning freeze provision pinpoints the triggering of the eight-year freeze on the land shown in the subdivision plan to "the date of the endorsement" of the plan's approval. In *Kitras, supra* at 254-255, the Supreme Judicial Court clarified the meaning of the term "endorsement" in the context of constructive approval. The court noted, "If a subdivision plan is approved by action of the planning board, then 'the planning board shall cause to be made upon the plan a written endorsement of its approval.' G. L. c. 41, § 81V. [However,] there is no 'endorsement' when a definitive subdivision plan is constructively approved through the inaction of a planning board. Nonetheless, . . . while not identical, the certificate issued by the town clerk in such circumstances is the 'functional equivalent[]' of a planning board's endorsement. . . . [E]ach evidences final approval [of a definitive subdivision plan], triggers the eight-year zoning freeze, entitles the party to record the plan, and triggers definite time periods for appeals." *Id.* at 254, quoting from *Kitras* v. *Zoning Adminstrator of Aquinnah*, 70 Mass. App. Ct. 561, 566 (2007), *S.C.*, 453 Mass. 245 (2009). See G. L. c. 41, §§ 81V, 81X, 81BB, and G. L. c. 40A, § 6, fifth par. "Moreover, it is the planning board's endorsement or the town clerk's certificate, as the case may be, that, by triggering the eight-year zoning freeze, terminates the process freeze that had been in effect since the first submission of the subdivision

plan. Absent the planning board's endorsement or the town clerk's certificate, there is no way to identify, with precision, when the eight-year zoning freeze commences and terminates." *Kitras*, 453 Mass. at 254. Therefore, according to *Kitras*, constructive approval is incomplete until a town clerk issues a certificate, thereby finalizing and endorsing the approval.

In *Kitras*, the precise issue raised was whether an eight-year freeze had been triggered when a subdivision plan had been constructively approved, and the appeal period had passed, but no certificate had been issued. The court concluded that, because the plaintiffs were unable to obtain a certificate from the town clerk, there was no endorsement of the plan under the statute, and thus, the eight-year freeze had not been triggered.[13] *Id.* at 255.

Here, Stone Ridge appealed to the Land Court in April, 2003, and requested that the judge find that the plan had been constructively approved due to the passing of the statutory deadline. Stone Ridge also asked that the judge order the town clerk to issue a certificate of constructive approval. Several years later, in May, 2006, the judge found in favor of Stone Ridge and ordered the town clerk to issue a certificate of constructive approval, which the clerk issued on June 30, 2006. Under *Kitras*, constructive approval of Stone Ridge's definitive subdivision plan was finalized on June 30, 2006, thereby triggering the eight-year freeze.[14]

Having established when the eight-year freeze began, our next step is to determine the period of time during which Stone Ridge's land was entitled to a process freeze. Pursuant to G. L. c. 40A, § 6, the process freeze on Stone Ridge's parcel attached when it filed its first preliminary plan in April, 2002, and continued, following Stone Ridge's submission of a definitive plan in October, 2002. According to *Kitras*, the process freeze

---

[13]The plaintiffs in *Kitras* sought relief in the nature of mandamus to order the clerk to issue a certificate, and the Superior Court granted that relief. The court reversed, however, on the ground that the plaintiffs' petition was untimely. *Kitras, supra* at 255.

[14]In his decision, the judge ruled that constructive approval of the subdivision plan occurred on January 9, 2003. At the time of the judge's decision, *Kitras* had not yet been decided. Because *Kitras* dictates that the eight-year freeze attached to the parcel on the date the certificate was issued by the town clerk (June 30, 2006), we deem the latter date to be the date when the eight-year freeze commenced.

then terminated upon the issuance of a certificate by the town clerk. The board concedes that the parcel in question is entitled to a process freeze during that period, even if the board's rescission of the constructive approval is determined to be valid. See *Krafchuk* v. *Planning Bd. of Ipswich*, 453 Mass. at 526-529.

Because Stone Ridge was entitled to a continuous freeze of the town's zoning provisions from the date of the submission of the first subdivision plan in 2002, the 2002 version of the LPOD by-law is the guiding by-law of the three versions of the LPOD by-law passed by the town.

4. *Validity of 2002 version of LPOD by-law under* SCIT, Inc. We next determine whether Stone Ridge was subject to the requirements of the 2002 version of the LPOD by-law.

In *SCIT, Inc.*, 19 Mass. App. Ct. at 106-107, we invalidated a portion of a Braintree zoning by-law which purported to make all uses in business districts subject to the grant of a special permit, while another portion of the by-law authorized certain business uses in those same districts as of right. We based our decision on G. L. c. 40A, § 4, inserted by St. 1975, c. 808, § 3, which requires that "[any] zoning ordinance or by-law which divides cities and towns into districts shall be uniform within the district for each class or kind of structures or uses permitted." The court characterized the uniformity requirement of § 4 "upon principles of equal treatment: all land in similar circumstances should be treated alike, so that 'if anyone can go ahead with a certain development [in a district], then so can everybody else.' " *SCIT, Inc., supra* at 107, quoting from 1 Williams, American Land Planning Law § 16.06 (1974). These principles prevent a board from allowing parties to move forward only "at its discretion or whim." *SCIT, Inc., supra* at 108, quoting from *Smith* v. *Board of Appeals of Fall River*, 319 Mass. 341, 344 (1946). To allow otherwise would confer on local zoning boards "a roving and virtually unlimited power to discriminate as to uses between landowners similarly situated." *SCIT, Inc., supra.*

In *Gage* v. *Egremont*, 409 Mass. 345, 347-348 (1991), the Supreme Judicial Court adopted the *SCIT, Inc.*, reasoning, but limited its holding to the proposition that a zoning district must allow at least one use as of right without the need for a special permit. The court observed that under G. L. c. 40A, § 4, "a zoning by-law must permit at least one use in each zoning

district as a matter of right. . . . Moreover, the statutory provision (G. L. c. 40A, § 9) that special permits are to be 'granted only for uses specifically authorized' would not justify a by-law in which not even one use was generally authorized in a zoning district and all uses required a special permit."[15] *Id.* at 348. Thus, *SCIT, Inc.*, and *Gage*, "taken together, mandate that towns may not place *all* uses in a district on special permit." Bobrowski, Massachusetts Land Use and Planning Law § 9.03[C] (2d ed. 2002).

The LPOD is an overlay district within the town that achieves its purpose of protecting local wetlands and watercourses through restrictive use regulations requiring a special permit.[16,17] The relevant language of the LPOD by-law is as follows: "Within the LPOD, no person shall undertake any land use activity except pursuant to special permit approval by the Town of Stockbridge Planning Board pursuant to the requirements of this section and Section 6.3 of this Bylaw. Land use activity means any construction or other activity which materially changes the use or appear-

---

[15]In *Gage*, an Egremont by-law allowed single and two-family residences as of right in a particular zoning district, but required a special permit for multifamily, retail business, or consumer service uses. The court held that the by-law passed muster under the uniformity requirement of § 4, but that certain language contained in the by-law did not meet the specificity requirement of G. L. c. 40A, § 9. *Gage* v. *Egremont, supra* at 348-349.

[16]"Overlay districts typically achieve their objectives without amending the underlying zoning by employing 'a technique in which new, more restrictive zoning is "laid over" an existing zone in order to further regulate or restrict certain permitted uses. . . . The typical overlay district is not an independent zoning district but simply a layer that supplements the underlying zoning district regulations.' Salsich & Tryniecki, Land Use Regulation 167 (1998). The more restricted area is often shown by cross-hatching or like device on a transparent material that is laid over the paper zoning map, hence the name. As the result of the introduction of the overlay zone, parcels of land within an overlay zone are subjected 'simultaneously . . . to two sets of zoning regulations: the underlying and the overlay zoning requirements.' Nolon, Local Land Use Controls That Achieve Smart Growth, 31 Envtl. L. 11025 (2001)." *KCI Mgmt., Inc.* v. *Board of Appeal of Boston*, 54 Mass. App. Ct. 254, 259 (2002).

[17]The board argues that the LPOD is not really an overlay district, but, rather, equivalent to an ordinary setback requirement, and is thus not subject to the *SCIT, Inc.*, standard. We reject the board's characterization of the LPOD. The language of all versions of the LPOD by-law state that it is an "overlay district," and the regulations in each version clearly establish that the LPOD is, in fact, an overlay district. See *KCI Mgmt., Inc.* v. *Board of Appeal of Boston, supra.*

ance of land or a structure or the intensity of the use of land or a structure." Activities exempt from the special permit requirement include: "Ordinary repair or maintenance or interior alterations to existing structures, provided there is no change of use; Agricultural operations which have an approved soil conservation plan; Non-structural or gardening uses not involving the cutting of shrubs and/or trees; Structures under one hundred (100) square feet in size; Removal of dead, diseased or dying tress; and Municipal activities."

In *KCI Mgmt., Inc.*, the principles of *SCIT, Inc.*, were applied to the granting of special permits for uses within overlay districts. *KCI Mgmt., Inc.* v. *Board of Appeal of Boston*, 54 Mass. App. Ct. 254, 262-263 (2002). We held that the overlay district by-law in question did not violate *SCIT, Inc.*, because it imposed only the equivalent of site plan review rather than requiring applicants to obtain discretionary special permits. *Id.* at 263. See *Y. D. Dugout, Inc.* v. *Board of Appeals of Canton*, 357 Mass. 25, 31 (1970).

Stone Ridge maintains that the 2002 version of the LPOD by-law is invalid under *SCIT, Inc.*, because any valuable use of land within the LPOD requires a special permit. The board disagrees, pointing to several uses enumerated in the by-law that are exempt from the special permit requirement. Stone Ridge counters that the exempted uses are too insignificant to pass muster under *SCIT, Inc.* The judge agreed with Stone Ridge, and invalidated the 2002 version of the LPOD by-law on the same grounds that he earlier had invalidated the 2004 version of the LPOD by-law. In reaching his decision, the judge dismissed the exempted activities noted, *supra*, as being of no specific value to a landowner because they either already are allowed under the Zoning Act, G. L. c. 40A, § 3,[18] or are de minimis in nature. On appeal, the board maintains that the uses provided for in the 2002 version of the LPOD by-law bring it into compliance with *SCIT, Inc.*

---

[18]General Laws c. 40A, § 3, as appearing in St. 1995, c. 225, § 1, provides in relevant part as follows:

> ·  "No zoning ordinance or by-law shall . . . require a special permit for the use of land for the primary purpose of agriculture, horticulture, floriculture, or viticulture . . . ."

We agree with the judge that the regulatory scheme of the 2002 version of the LPOD by-law is in violation of *SCIT, Inc.*, because it does not permit a landowner to undertake any significant or valuable use of his land without first obtaining a discretionary special permit from the board. As noted, *supra*, the *SCIT, Inc.*, and *Gage* cases, taken together, mandate that communities may not condition all uses in a district on the grant of a discretionary special permit. An underlying assumption supporting the conclusion reached in those cases is that the required "use as of right" must have some practical significance to the landowner. Therefore, including merely incidental or accessory uses, many of which already are statutorily excepted under G. L. c. 40A, § 3, of the Zoning Act, will not save a by-law from challenge on *SCIT, Inc.*, grounds. The exempted uses relied upon by the board can only be described in those terms. As aptly noted by the Land Court, "[w]ere allowance of exempt uses enough to satisfy the uniformity requirement of G. L. c. 40A, § 4, every zoning bylaw and ordinance in Massachusetts would be insulated from [a *SCIT, Inc.*,] challenge on that basis." *Avalon Properties, Inc.*, v. *Peabody*, 6 Mass. Land Ct. Rptr. 327, 328 (Land Ct. No. 234755 Nov. 30, 1998). Because the 2002 version of the LPOD by-law provides no significant or beneficial use as of right, it is in violation of *SCIT, Inc.*, and is therefore invalid.

5. *Validity of the board's rescissions.* Because the issuance of a certificate is required to finalize the constructive approval of a definitive subdivision plan in the circumstances present here, we hold that the board's rescissions were invalid because they occurred before the town clerk issued the certificate of constructive approval. See *Kitras*, 453 Mass. at 254.

On October 31, 2003, the board rescinded its apparent constructive approval of Stone Ridge's definitive subdivision plan. On April 24, 2006, the board again rescinded the apparent constructive approval of the definitive subdivision plan, on the same grounds enumerated in its 2003 rescission. On June 30, 2006, the town clerk issued the certificate evidencing constructive approval of Stone Ridge's definitive subdivision plan. The certificate was issued well after the board's attempted rescissions. Thus, the rescissions had no effect because there simply was nothing to rescind.

6. *Conclusion.* We recognize that our decision in these appeals may not end the attempt by the board to stop Stone Ridge from building this subdivision. We have noticed from the materials submitted on appeal that, unfortunately, an extraordinary amount of emotion has entered into the decision-making process of certain members of the board. We emphasize that emotion should not play any part in a board member's decision. Rather, a member's decision should be based on a calm, reasoned approach to a just and fair decision based on the facts before the board.

In Land Court no. 307309, the amended judgment entered on May 7, 2007, is affirmed. In Land Court nos. 294282 and 323844, the summary judgment entered on August 13, 2007, is affirmed.

*So ordered.*